EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* HIPÓLITO RIVERA RAMOS, acusado y apelante.

*Número*: CR-62-126      *Resuelto*: 21 de junio de 1963

*G. Almeda Aponte,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

El 13 de marzo de 1961 se radicó denuncia en la Sala de Cayey del Tribunal de Distrito contra Hipólito Rivera Ramos

por el delito de acometimiento y agresión grave. Se le imputó que el 25 de febrero de 1961 y en la calle Santiago R. Palmer de Cayey, ilegal, voluntaria y maliciosamente y con la intención criminal de causar grave daño corporal en la persona de un semejante, armado de una macana de madera, violentamente acometió y agredió a Agustín Díaz Delegado ocasionándole dos heridas en la cabeza de las que fue asistido en el Centro de Salud de Cayey. El agravante consistió en que el delito fue cometido con la intención premeditada y para el fin calculado de inferir grave daño corporal y en que se utilizó un arma contundente con la que se podía causar grave daño y hasta la muerte a un ser humano.

En 21 de marzo de 1961 la Sala de Cayey dictó sentencia, bajo alegación de culpabilidad, condenando a Rivera Ramos a cumplir 40 días de cárcel por el referido delito. La sentencia quedó totalmente cumplida el 7 de abril de 1961.

El 14 de abril de 1961 el Ministerio Público radicó acusación contra el apelante en la Sala de Guayama del Tribunal Superior por el delito de homicidio voluntario. La acusación imputó que el 25 de febrero de 1961 y en Cayey, el acusado Hipólito Rivera Ramos en ocasión de una súbita pendencia y arrebato de cólera acometió y agredió con intención de matar, con una macana, al ser humano Agustín Díaz, infiriéndole varios golpes en la cabeza que le fracturaron el cráneo, a consecuencia de lo cual falleció Díaz el 14 de marzo de 1961.

En este segundo procedimiento por homicidio el apelante alegó haber estado expuesto anteriormente, por cuanto había sido sentenciado a cumplir y cumplió la pena de 40 días de cárcel por el acometimiento y agresión grave a Agustín Díaz; que Díaz falleció el 14 de marzo de 1961, 7 días antes de que el Tribunal de Distrito aceptase la declaración de culpabilidad que hizo el acusado de acometimiento y agresión grave y lo sentenciara; y que los hechos en ambos casos eran iguales y habían surgido de la misma transacción criminal o evento delictivo.

La Sala sentenciadora declaró sin lugar el planteamiento de exposición anterior, y visto el caso en los méritos por tribunal de derecho, se declaró al apelante convicto de homicidio y se le impuso una pena de uno a cinco años de presidio. Ante nos, el apelante no impugna la convicción en sí. Levanta como único error el que la Sala de instancia declarara sin lugar la defensa de exposición anterior.

En la vista el Fiscal y la defensa estipularon que en ambos casos se trataba de los mismos hechos, aunque en el segundo existía el hecho adicional de la muerte del perjudicado. Estipularon además que el apelante fue sentenciado en el caso de acometimiento y agresión grave 7 días después de haber fallecido el perjudicado.

Surge del récord que el agresor y el agredido fueron llevados varios días después de los hechos ante el Juez de Distrito para la investigación del caso, y se ordenó la denuncia por acometimiento y agresión grave contra el acusado. Éste quedó preso hasta que lo llevaron a corte para el juicio. En la vista de este caso el acusado declaró:

"HON. FISCAL:

P. ¿Y cuando usted fue a la Corte que se declaró culpable ya usted sabía que el hombre se había muerto?

R. Entonces yo no lo sabía ni por comentarios, ni nada; entonces fueron y me citaron a la Cárcel Municipal y cuando me citaron yo tenía que ir, no podía dejar de comparecer a la Corte; entonces cuando fui a la Corte me dice el Juez; 'Hipólito, usted tiene dos casos' me dijo 'Aquí'. Yo le dije . . . fíjese si es verdad que le estoy diciendo la verdad. . .

P. Sí, hombre, diga.

R. 'Tiene un acometimiento y agresión simple y van dos años de eso; dos años de eso y el motivo de que hace dos años de ese caso es que usted estaba bajo un tratamiento. . .'

P. ¿Tratamiento de qué?

R. De un doctor.

P. ¿Pero qué clase de tratamiento?

R. De un doctor de la Penitenciaría Insular de Río Piedras.

P. ¿Pero no sabe si era de la vejiga o de la mente?

R. De la mente.

P. De la mente.

R. Entonces me dieron de alta porque salí bien, salí bien porque en una causa que yo fui, que fue la causa que me sentenciaron a mí, trabajé en los proyectos, en los talleres de ebanistería.

P. ¿Y cuándo fue que usted averiguó que el hombre había muerto?

R. Cuando fui a la Corte yo creía que estaba vivo todavía.

P. ¿Y cuándo lo averiguó?" . . . . . . .

.   .   .   .   .   .   .   .   .

"R. Entonces, cuando fui a la Corte en ese caso me dice: 'Usted, Hipólito Rivera Ramos, tiene un caso de un golpe que le dio a uno. ¿Usted es culpable o inocente?—Sr. Juez, me voy a hacer culpable en ese caso. ¿Usted sabe que el hombre se murió?'

P. ¿Le dijo el Juez?

R. Dice el Juez: '¿Usted sabe que el hombre se murió?—Sí, señor; se murió, me lo dijeron, yo no lo sabía.' Entonces me dice: 'Pero no murió de eso.'

P. ¿Quién dijo?

R. Me dice el Juez: '¿Usted sabe que el hombre se murió?' y yo le dije: 'Yo no lo sabía; ahora lo sé.' Pero no murió de eso, ¿usted se va a hacer culpable?

P. ¿El Juez le dijo que no murió de eso, del golpe ese que le había dado?

R. Sí. Me dijo: '¿Usted se va a hacer culpable?—Sí, me voy a hacer culpable. Pues le voy a echar 40 días de cárcel.' "

.   .   .   .   .   .   .   .   .

"R. El Juez me dijo: 'De un golpe que usted le dio a uno aquí tiene un caso de acometimiento y agresión grave: ¿usted es culpable o se va a hacer culpable o inocente?—No, yo me voy a hacer culpable; usted sabe que después que yo sepa que un caso lo he cometido, yo me hago culpable.' y me dice: '¿Usted sabe que el hombre se murió?—No.' Yo me sorprendí y me dice: 'Pero no murió de eso, ¿usted se va a hacer culpable del caso?—Sí. Tiene 40 días de cárcel.' "

A los efectos del planteamiento suscitado, conviene exponer la forma en que ocurrió la muerte objeto del proceso de homicidio según surge del récord, que es bastante breve.

El Dr. Bolívar Patiño Arca declarando por El Pueblo dijo que la víctima fue ingresada en el Hospital de Distrito de Fajardo el *7 de marzo* de 1961 por agravación de una condición respiratoria consecutiva a un trauma craneoencefalítico recibido tiempo antes. Ingresó con traqueotomía de emergencia para aliviar esa condición. Murió siete días después, el 14 de marzo. El cráneo presentaba evidencia de una fractura lineal del hueso temporal izquierdo, recibida como un mes antes. Ese tipo de fractura es *un solo golpe* y no había ninguna otra fractura en el cráneo. Fue el único trauma de significación que encontró, y la fractura tuvo que ser causada por un instrumento de superficie roma. No podía ser un instrumento afilado. Concluyó el facultativo que había existido traumatismo del cráneo con hemorragia intercerebral y complicación de una bronconeumonia bilateral con abcesos, y que todo ello podía tener relación con los hechos del 25 de febrero.

El próximo testigo del Fiscal y único en cuanto a los hechos, relató que el acusado y la víctima estaban bebiendo licor en el negocio de ésta; surgió una discusión entre ellos por un peso; la víctima "haló por una maceta" que tenía dentro del mostrador y el muchacho "voló" y se la quitó y le entró a golpes; le dio dos golpes. Al primero la víctima se cayó y el testigo "embaló" a buscar la policía. Le dio por la cabeza, por el lado izquierdo, y cuando se fue "ellos estaban emborujados allí dentro." Dijo que en ese momento no vio allí una hachuela. A la víctima le faltaba un brazo. La víctima "haló" la macana para darle al acusado, pero éste se la quitó.

Ésa fue la prueba de cargo. El Fiscal renunció al testimonio del policía Félix Cartagena, quien fue puesto a declarar por la defensa. Le avisaron de una pelea, y al llegar al negocio el agredido estaba tirado en el piso tratándose de parar. Cree que estaba inconsciente. El acusado estaba al frente con

la macana y le dijo que la víctima le iba a dar con una hachuela y él le dio con la maceta. El policía encontró a la víctima con una hachuela en la mano. Ocupó la hachuela y la maceta, admitidas en evidencia. El día de la investigación ambos, la víctima y el acusado, fueron ante el Juez. El agredido contestaba al Juez correctamente.

El acusado declaró que ambos habían estado tomando licor en el negocio del agredido desde las 11 de la mañana hasta las dos de la tarde, a invitación de éste que no le gustaba beber con los de sociedad sino con "los más atómicos"; surgió una discusión por una bebida, y la víctima le tiró varias veces con una hachuela y fallaba, y se le cayó al suelo; entonces cogió la macana que tenía adentro para darle al testigo y éste se la quitó y le dio con ella.

El Juez de Distrito declaró que él investigó el caso estando presentes tanto el acusado como el perjudicado; que determinó causa probable de acometimiento y agresión a base de las declaraciones de ambos; el perjudicado sólo presentaba un vendaje en la cabeza y estaba bien, hablaba correctamente, se expresaba con claridad y caminaba normalmente. Ordenó el ingreso del acusado en la cárcel municipal y posteriormente en el juicio éste hizo alegación de culpabilidad y fue sentenciado. Manifestó el Juez que no tenía conocimiento a esa fecha de que el perjudicado hubiera muerto. (¹)

■ La Carta de Derechos de la Constitución del Estado Libre Asociado dispone en su Sec. 11: "Nadie será puesto en riesgo de ser castigado dos veces por el mismo delito."

---

(¹) En *Pueblo* v. *Nieves*, 63 D.P.R. 532 (1944), se suscitó una situación de hecho muy parecida a la de este caso. Se archivó una acusación de asesinato por el Tribunal de instancia a base de una convicción anterior de acometimiento y agresión grave, en virtud de denuncia radicada cuatro días después de haber muerto la víctima de la agresión, que lo fue con una piedra. Este Tribunal se limitó en ese caso a sostener que el fallo del Juez sentenciador no era apelable por el Ministerio Público. No hicimos en ese entonces expresión alguna en cuanto a la corrección o no corrección en derecho de dicho fallo.

De manera más explícita dispone el Art. 6 del Código de Enjuiciamiento Criminal que ninguna persona podrá ser sometida a un segundo proceso por un delito público por el cual ya haya sido procesada y convicta o absuelta. Contra la acusación, reza el Art. 162 del propio Código, puede interponerse la alegación de haber estado una vez expuesto por el mismo delito, y la sentencia anterior condenatoria o absolutoria por igual delito; y según el Art. 169, si el acusado hubiere sido convicto o absuelto de una acusación, o estado en peligro alguna vez por la misma, tal convicción, absolución o peligro constituirá impedimento a la nueva acusación por el delito imputado en la anterior, o tentativa de cometerlo, o por cualquier delito necesariamente comprendido en la misma de que hubiera podido ser convicto en virtud de dicha acusación anterior.

■ Por supuesto, nadie ha de discutir que el acometimiento y agresión grave y el homicidio no son en derecho el mismo delito a los fines de las anteriores disposiciones constitucional y estatutarias. Pero el problema ante nos no se reduce a determinar si el acusado fue convicto por delitos iguales o distintos, ni tampoco es el caso de la imposición de distintos castigos por constituir los hechos a la vez distintos delitos positivos.

■ El Procurador General en su Informe nos concede el beneficio de una clara y correcta exposición de fondo del problema ahora envuelto, que merece que reproduzcamos: (traducimos al español sus citas del inglés)

"En todo asesinato u homicidio en que la muerte de la víctima ha sido causada por medio de golpes o heridas, la comisión del delito se inicia con un *acometimiento y agresión*. Luego entonces, *el acometimiento y agresión* en ese caso es un ingrediente del delito mayor, o sea, el delito menor se funde (merge) en el delito mayor, *Pueblo* v. *Reyes*, 55 D.P.R. 834, 837 (1940) ; *Pueblo* v. *Gómez*, 14 D.P.R. 127 (1908) ; *Pueblo* v. *Dumas*, 14 D.P.R. 397, 404 (1908). Así, bajo una acusación por el delito mayor el

acusado podría resultar convicto del delito menor por estar éste último necesariamente comprendido dentro del primero.

"A los fines de la alegación de doble exposición se considera que dos delitos son idénticos si uno está necesariamente comprendido dentro del otro. En otras palabras, generalmente se ha aceptado como doctrina que la convicción o absolución por un delito menor el cual necesariamente se encuentra comprendido dentro de un delito mayor constituye un impedimento a una convicción por este último. Sobre este extremo en 7 *Cal. Jur.* 958, sec. 100, se dice como sigue:

'Cuando un crimen es un elemento necesario en y constituye una parte esencial de otro crimen, y ambos son de hecho un solo evento, la condena o absolución de uno es un impedimento al procesamiento del otro. Siempre que el estatuto permite una condena de un crimen menor necesariamente incluido en uno mayor imputado al acusado, una condena o absolución de tal crimen mayor es un impedimento a una acusación posterior por cualquier delito menor necesariamente incluido en aquél. Y, *e converso*, cuando se acusa a uno por un crimen menor necesariamente incluido en uno mayor, una condena o absolución, a menos que se obtenga mediante connivencia o colusión del acusado, es un impedimento a una posterior acusación por dicho delito mayor, ya que el mayor no puede luego ser procesado sin abrir la puerta para una condena por un delito por el cual el acusado ha sido juzgado y absuelto o condenado. Aunque en otra parte hay criterio en contrario, esta norma es igualmente cierta aunque la corte que juzga el delito menor no tiene jurisdicción sobre el mayor. El Estado es una sola entidad. Puede escoger el foro y determinar por cuál delito ha de procesar a un acusado. Una vez que lo ha hecho, no puede quejarse si no hizo una selección sabia.'

"En el caso de *Pueblo* v. *Peña*, 18 D.P.R. 903 (1912) el acusado había sido absuelto en la Corte Municipal de un delito de *acometimiento y agresión*. No obstante, fue presentada una acusación en la Corte de Distrito imputándole el delito de *acometimiento con intención de cometer homicidio*. Celebrado el juicio, el jurado emitió un veredicto de culpabilidad por el delito de *acometimiento y agresión con circunstancias agravantes* y fue sentenciado a cumplir un (1) año de cárcel. Habiendo alegado

que había sido expuesto anteriormente (former jeopardy) por el mismo delito, esta Superioridad en apelación, después de aludir al *Artículo 169 del Código de Enjuiciamiento Criminal*, resolvió la cuestión a su favor expresándose como sigue, a la página 907:

'Ha quedado bien establecido por la uniforme corriente de autoridades que cuando se imputa a una persona un delito que comprende otro de grado menor, y se celebra un juicio en debida forma y declara culpable a dicha persona solamente de la convicción del delito de grado menor, el veredicto viene a hacer las veces de una absolución por el delito imputado y no puede el acusado ser nuevamente juzgado por ese delito aun en el caso de que se conceda un nuevo juicio mediante solicitud del referido acusado; y examinando nuestros propios estatutos encontramos que el delito de *acometimiento con arma mortífera* está necesariamente comprendido en el de *acometimiento con intención de cometer homicidio*, y en una denuncia o acusación en que se impute la comisión del delito mayor con arma mortífera puede declararse al acusado del delito menor. (*People* v. *Gordon*, 99 Cal. 228.) Por consiguiente, desde luego que el delito de *acometimiento y agresión con circunstancias agravantes* del cual fue declarado culpable el acusado, estaba debidamente comprendido en el delito de *acometimiento con intención de cometer homicidio* que se le imputó en la acusación, y pudo justamente declarársele culpable del delito menor, aun cuando no hubiera formulado su alegación. Por tanto, habiendo sido el acusado absuelto anteriormente en la Corte Municipal *por el mismo delito,* no debió habérsele declarado culpable de dicho delito en la corte de distrito después que hizo su alegación ante la corte de haber sido ya expuesto por dicho delito. (Subrayado nuestro.)'

"La doctrina general aceptada en muchas otras jurisdicciones, particularmente en el estado de California, es en el sentido de que un acusado que ha sido absuelto o convicto por los mismos hechos de un delito menor comprendido necesariamente dentro de un delito mayor no puede ser nuevamente juzgado ni convicto por el delito mayor, porque ello constituiría una violación al principio que encarna la disposición constitucional que prohibe que una persona sea puesta en riesgo de ser castigada dos veces por el mismo delito.

"En el caso *People* v. *McDaniels,* 137 Cal. 192, 69 P. 1006 (1902) el acusado hizo alegación de culpabilidad ante el juez de paz por un delito de agresión y fue sentenciado a cumplir 175 días de cárcel. Luego fue acusado, convicto y sentenciado por un delito de *acometimiento con arma mortífera con la intención de cometer asesinato.* El Tribunal de instancia no permitió que se presentara evidencia para demostrar que el acusado había estado expuesto anteriormente por el mismo delito. El Tribunal Supremo de California resuelve el punto y citando autoridades se expresa así:

'Está bien sentado que una condena por un crimen menor incluido es una absolución de todo otro delito mayor incluido en la acusación o denuncia, y cuando tal condena por un delito menor se deja sin efecto, y se concede un nuevo juicio, aun a solicitud del acusado, o en apelación, éste no puede ser convicto de un delito mayor de aquel por el cual se le halló primeramente culpable. *Si una absolución puede tener tal efecto, con mayor fuerza debe sostenerse que una condena anterior de cualquier delito incluido ha de impedir una acusación posterior por un delito mayor incluido en la* misma transacción.' (Subrayado nuestro.)

'. . . Por supuesto, si la condena anterior se obtuvo mediante fraude, connivencia o colusión del acusado, este hecho la vicia, y no impide una acusación posterior. [citas]

'. . . La disposición constitucional aquí envuelta se hizo para la protección del ciudadano, y debe ser interpretada liberalmente en su favor. En *State* v. *Cooper,* 13, N. J. Law 361, 25 Am. Dec. 490, se dijo: "Cuando el estado ha creído propio el perseguir el delito en su forma más leve, es mejor que el remanente del delito quede sin castigo, que, por sostenerse una segunda acusación, se sancione una práctica que podría convertirse en un instrumento de opresión al ciudadano." (P. 1009)'

"La misma doctrina es ratificada en *People* v. *Mendoza,* 131 P 2d 622 (1942, Cal. C.A.). En este caso el acusado había hecho alegación de culpabilidad en la corte municipal por un delito de *agresión* y fue sentenciado a cumplir noventa (90) días de cárcel. Luego le fue formulada una acusación imputándole un delito de *tentativa de cometer violación* fundada en los mismos hechos. Al resolver la cuestión sobre 'exposición anterior' el Tribunal dice:

'Ninguna norma está más firmemente sentada que aquella que sostiene que una serie de imputaciones no deben promoverse de los mismos hechos. En relación con esta norma, se dice en Bishop's New Criminal Law, Volumen I, Sección 1057: "Cuando él ha sido puesto en riesgo por el menor, entonces, por ejemplo, se le procesa por el mayor, nuestra garantía constitucional se interpone en el camino de que se le condene una segunda vez por el menor, ya que un riesgo del mayor es igualmente un riesgo del menor. Y ya que reconocidamente el gobierno no puede comenzar con el mayor e ir escalón por escalón poniendo al hombre en riesgo por cada etapa incluido en el mismo, ni tampoco puede comenzar con el menor y escalar al mayor, precisamente con el mismo resultado." (P. 326)'

"En Application of McNeer, 343 P 2d 304 (1959, Cal. C.A.) el Tribunal expresa:

'La condena de un delito menor incluido se sostuvo que era un impedimento al proceso del mayor, bajo la teoría de que el condenar por el mayor sería el condenar dos veces el menor. Ello, por supuesto, no hace distinción en cuanto a cual de los delitos se acusó primero. Si al acusado se le juzgó primeramente por el delito menor ese proceso impide el proceso posterior por el delito mayor.'

"Refiriéndose al *Artículo 1023 del Código Penal de California,* que corresponde al *Artículo 169* de nuestro *Código de Enjuiciamiento Criminal,* el Tribunal Supremo de aquel estado en *Gómez* v. *Superior Ct.,* 328 P2d 976 (1958) dice, citando jurisprudencia:

' "Aunque la sección 1023 se refiere a una situación en que el proceso por el delito mayor es primero, no hay tal restricción en los casos. Si al acusado se le juzga antes por acometimiento y luego por agresión, el proceso por el delito incluido impide el proceso posterior por el delito mayor. (citas) 'Una condena del delito menor se considera un impedimiento a [un] proceso por el mayor bajo la teoría de que condenar por el mayor sería condenar dos veces por el menor. (cita) Si esa no fuera la norma, la sección 1023 se anularía por el simple medio de comenzar con el proceso del delito menor y ascender la escala.' " (P. 981).

"En *People* v. *Krupa*, 64 Cal. App. 2d 592, 149 P 2d 416 (1944) el Tribunal expresa:

'Cuando el Estado en lugar de acusar primero por el delito que lleva la pena más fuerte, persigue por el delito que lleva la pena más liviana, o acepta una declaración de culpabilidad de ese delito, no tiene derecho después a acusar por el delito que lleva la pena más onerosa.'

"Véase sobre esos mismos extremos, *People* v. *Blue*, 326 P 2d 183 (1958, C.C.A.).

"Esta doctrina ha sido seguida sustancialmente en otras jurisdicciones. En *State* v. *Colgate*, 3 P 346 (1884, Ka.) se dice al respecto:

'. . . un solo crimen no puede dividirse en partes separadas y el supuesto ofensor ser perseguido por cada una de esas partes separadas, aunque cada una de ellas por sí misma constituya un delito separado. Si el ofensor es procesado por una parte, eso termina el proceso por ese crimen, si esa parte, por sí misma, constituye un delito por el cual puede haber una condena. Y, generalmente, pensaríamos que la comisión de un simple acto ilegal puede suministrar la materia o base de solo una acusación criminal.'

"En *State* v. *Smith*, 13 SW 391 (1890, Arka.) el acusado había sido convicto de *acometimiento y agresión grave*. Se resolvió que constituía una violación a la cláusula constitucional sobre *doble exposición* acusarlo *nuevamente* por los mismos hechos de un delito de *atentado a la vida*.

"En *Bell* v. *State*, 30 SW 294 (1898, Ga.) el Tribunal Supremo del estado se acoge al mismo principio:

'Cuando una persona ha sido puesta en riesgo legal de una condena por un crimen que es un elemento necesario en, y constituye una parte esencial de, otro crimen, tal riesgo es un impedimento a un proceso posterior por este último delito, si se basa en el mismo hecho.'

"En *State* v. *Wondra*, 131 NW 496 (1911, Minn.) el acusado había sido convicto y sentenciado en la Corte Municipal por los mismos hechos de un delito menor comprendido en el delito de mutilación. El tribunal resuelve que hubo exposición anterior (former jeopardy). Se cita al caso de *People* v. *Defoor*, 100 Cal. 150, 34 P 642 (1893) expresando lo siguiente:

' "Habiendo sido convicto el acusado por ese delito (ataque), a él no podía procesársele por mutilación cometida durante el mismo ataque sin infligir la disposición constitucional que lo protege de ser condenado dos veces por el mismo delito—una disposición tan importante a considerarse en forma tan sagrada como el juicio por jurado, o cualquier otra disposición constitucional dirigida a la protección de la vida, libertad y la propiedad del ciudadano." . . . una condena válida por ataque, que no ha sido obtenida fraudulentamente, sería un impedimento a un proceso posterior por mutilación causada por ese ataque.'

[Siguen las citas de un crecido número de decisiones y autoridades.]

"Como ha podido observarse la norma general es el resultado de una interpretación liberal por parte de los tribunales de justicia respecto de la expresión 'el mismo delito'. Una interpretación literal de esta expresión podría desafortunadamente conducir a la desvirtualización del verdadero sentido y propósito de la disposición constitucional. La experiencia nos enseña que la consumación de un acto delictivo puede arrastrar consigo la realización de una serie de otros actos concadenados los cuales por sí solos, tomados aisladamente, pueden constituir por definición de ley delitos distintos. Por ejemplo, el acto de causar la muerte a un semejante mediante golpes conlleva necesariamente el acto del acometimiento, y el acto de la agresión simple o grave. Siendo cada uno de estos actos un delito distinto, una interpretación restrictiva de la disposición constitucional permitiría que el acusado fuera perseguido en forma escalonada desde el delito menor de acometimiento hasta el delito mayor de asesinato. Sin embargo, ya hemos visto que tal actuación constituiría una violación a la disposición que impide que una persona sea puesta en riesgo de ser castigada dos veces por el *mismo delito*."

Después de esa exposición, el Procurador expresa que esas normas no se aplican a la situación de hecho en el caso de autos, porque entiende que dicha norma o principio general no es aplicable "cuando luego de instituido el proceso contra el acusado por el *delito menor* ocurre una nueva circunstancia o hecho que agrava el acto realizado. Entendemos que una persona que ha sido juzgada, convicta o absuelta por el delito

menor puede ser juzgada por el delito mayor si, *al momento* en que se inicia la acción del Estado mediante la radicación de la denuncia correspondiente por el delito menor, aun no ha ocurrido el hecho agravante por el cual se le juzga posteriormente. . . . Fácilmente podría esa persona librarse del castigo por causar la muerte de su semejante con la sola alegación de culpabilidad por el acto de la agresión *interin* ocurre la muerte de la víctima." (El énfasis de la cita es del Procurador.)

Continúa argumentando: "La sociedad no puede estar sujeta a estas contingencias. El Estado no debe permanecer en actitud pasiva esperando, sin poder predecirlo, que ocurra o no el suceso agravante. El Estado está en la obligación de tan pronto ocurre un acto delictivo iniciar el procedimiento para castigar al responsable mediante la radicación de la denuncia o acusación correspondiente. Iniciada esta acción por el Estado el acusado puede ser juzgado, convicto o absuelto por los hechos imputados en la denuncia o acusación los cuales por sí solos son constitutivos de un delito. Si con posterioridad ocurre el evento agravante imprevisto queda el Estado facultado para procesar al acusado por este *nuevo delito* y no puede entonces interponer la defensa de exposición anterior por el mismo delito (former jeopardy). No se trata ya de un mismo delito por el cual se le pone en riesgo de ser castigado dos veces. Ha surgido un *hecho nuevo* que crea un *nuevo delito*. Como cuestión de realidad nunca estuvo en riesgo de ser castigado por ese hecho delictivo." (Énfasis del Procurador.)

■ Nos cita de 1 Wharton's *Criminal Law and Procedure*, pág. 353, 12th Ed.:

"Si, *después de un proceso* por un delito, sobreviene *un nuevo hecho* del cual es responsable el acusado, y que cambia la naturaleza del crimen, y junto con el hecho anterior, constituye un delito nuevo y distinto, una absolución o condena del primer delito no es un impedimento para el otro delito distinto." (Primer énfasis es nuestro.)

También, de 1 Bishop's *New Criminal Law*, Pág 634, 8th Ed., sec. 1059 cita:

"Si dentro de un año un día después de una agresión la persona agredida muere, el delito se convierte en un homicidio criminal. Entonces, aunque hubiera habido una condena *intermedia* por acometimiento y agresión, puede haber una acusación por el homicidio, no, según aparece, porque el acometimiento sea el delito menor, sino porque el *golpe que no había producido la muerte* es, cuando se le mira a la luz de sus efectos, una cosa distinta del *golpe que produjo la muerte*." (Énfasis nuestro.)

Y, de Fricke, *California Criminal Law*, pág. 401, 6th Ed., lo siguiente:

"La condena, absolución o proceso de una persona no es un impedimento para un subsiguiente proceso de esa persona por un delito que *no existía al tiempo del juicio anterior*. Así, cuando un acusado ha realizado un acto de violencia que en sus resultados inmediatos equivale a un delito menos grave pero que en sus consecuencias posteriores en la víctima de la violencia se convierte en un homicidio criminal por la muerte de la víctima, una condena, absolución o juicio de esa persona por el delito menos grave no impedirá un proceso por asesinato u homicidio basado en la muerte de la víctima *con posterioridad a dicho proceso anterior*." (Énfasis nuestro.)

Si la condena por homicidio hubiera sido la primera, incuestionablemente al apelante no se le hubiera podido procesar y condenar después por acometimiento y agresión grave, en las circunstancias de este caso. Véase la discusión en *Commonwealth* v. *Comber* (Pa.) 97 A.2d 343, y *anotación* que le sigue en 37 A.L.R.2d pág. 1068. Nos enfrentamos por el contrario a una situación que ocurre con poca frecuencia en relación con casos de muerte ilegal, en donde primero se condenó por la agresión que causó la muerte.

▪ Ya en esta área, estamos enteramente de acuerdo con los criterios del Procurador, pero no podemos convenir en cuanto a la disposición final del caso. Hay un detalle en esos criterios que hemos señalado enfatizándolo en las citas hechas

que nos impide sostener la segunda condena. En este caso la víctima ya había muerto el día que el apelante fue condenado por acometimiento y agresión grave. El *hecho nuevo* que sobrevino, la muerte, no lo fue *después* de la condena, ni tampoco en el ínterin entre los dos procesos, ni fue un hecho adicional *intermedio*. Cuando al apelante se le procesó y sentenció por acometimiento y agresión grave, el 21 de marzo, hacía ya siete días que él había cometido un homicidio con esa agresión. Parafraseando a Bishop en su anterior cita, cuando se condenó al apelante por agresión, dicha agresión *sí* ya era *el golpe que había producido la muerte,* luego ya no sería un *golpe distinto* el que sirvió de base al proceso de homicidio. Ni podemos decir con Fricke que el delito de homicidio *no existía* cuando hubo la condena anterior; o que este proceso de homicidio que revisamos se basó en una muerte ocurrida *con posterioridad* al primer proceso. Tampoco era el caso en que el Estado se viera obligado a no enjuiciar por el delito de agresión *"ínterin"* ocurriera la muerte, que por ley puede ser hasta dentro de 1 año 1 día para constituir asesinato u homicidio, ya que la muerte había acontecido a la fecha de la primera condena.

En *State* v. *Littlefield,* 70 Me. 452, 35 Am. Rep. 335, se sostuvo que una condena anterior de acometimiento y agresión no era impedimento a una acusación de homicidio, cuando las heridas produjeron la muerte después de la condena anterior, y se dijo:

"Al momento del primer proceso y condena el acusado no había cometido el crimen que ahora se le imputa. Cierto, la fuerza se había infligido en la persona de Morton, *pero su muerte no había acontecido.* La fuerza seguía actuando para producir su efecto, y el acusado era tan responsable por su consecuencia natural y necesaria como si todo el tiempo la hubiera estado aplicando sobre el cuerpo de su víctima. Cuando se causó la muerte por esa fuerza, se *consumó* por el acusado un crimen nuevo y distinto, del cual *antes* él no era culpable, *y por el cual él no hubiera podido ser convicto al momento del primer proceso."* (Énfasis suplido.)

Cf. *Commonwealth* v. *Roby*, 29 Mass. 496.

En *Johnson* v. *State*, 19 Tex. 453, 53 Am. Rep. 385, se sostuvo igual criterio que en *Littlefield.* Se dijo:

"No puede haber nunca el crimen de asesinato u homicidio hasta que la persona atacada muera. Estos delitos no tienen existencia de hecho ni de derecho hasta dicha muerte. No puede por lo tanto decirse que uno es juzgado *por el mismo delito* cuando se le juzga por ataque *durante la vida* y se le juzga por asesinato u homicidio *después de la muerte* del perjudicado. La muerte de la persona agredida crea un nuevo crimen. Al momento en que el acusado fue convicto del acometimiento y agresión de Davis, la corte en que se obtuvo esa condena no tenía jurisdicción del delito que aquí se persigue, *porque tal delito en ese momento no se había consumado y no podía en ese entonces ser enjuiciado.* Y es cierto que el delito mayor incluye el menor. Y también es cierto que cuando un delito consiste de diferentes grados, y el acusado ante una acusación o denuncia es condenado o absuelto de cualquier grado de dicho delito, tal condena o absolución es un impedimento a cualquier posterior enjuiciamiento del delito. [citas] Pero estas normas no se aplican cuando el delito mayor *no se ha completado* a la fecha de la condena o absolución de un grado menor incluido en él, *porque tal delito mayor no existía entonces.*" (Énfasis suplido.)

En *Díaz* v. *United States*, 223 U.S. 442, ocurrió que en 30 de mayo de 1906 Díaz agredió a una persona, y al día siguiente se le acusó de acometimiento y agresión. Se le halló culpable y pagó una multa. El 26 de junio el agredido murió, y se procesó a Díaz por homicidio. Desestimando la alegación de exposición anterior, el Tribunal expresó que el homicidio y el acometimiento y agresión, aunque idénticos en algunos de sus ingredientes, eran delitos distintos de hecho y de derecho; que la muerte del agredido era el principal ingrediente del homicidio, pero no era parte del acometimiento y agresión; que *a la fecha del juicio de este último la muerte no había sobrevenido*, y no fue hasta que sobrevino que se perpetró el homicidio; *entonces, y no antes*, era posible que el acusado fuera puesto en riesgo por este último delito. Véase la amplia

discusión del problema en *People* v. *Harrison*, 395 Ill. 463, 70 N.E.2d 596, y *Commonwealth* v. *Ramunno*, 219 Pa. 204, 68 Atl. 184. Cf. *People* v. *Detroit B. I. & W. Ferry Co.*, 187 Mich. 177, 153 N.W. 799; *Curtis* v. *State*, 22 Tex. App. 227, 3 S.W. 86.

En las circunstancias de este caso, en que entre el primer y segundo delitos imputados no existe otro ingrediente distinto sino el de la muerte de la persona agredida, habiendo ocurrido dicha muerte *antes* de la condena en el proceso anterior, por lo que el apelante ya había perpetrado el delito de homicidio a la fecha de ese proceso y condena, es de aplicación lo dispuesto en el Art. 44 del Código Penal:

"Un acto u omisión penable de distintos modos por distintas disposiciones de este Código, podrá castigarse con arreglo a cualquiera de dichas disposiciones, pero en ningún caso bajo más de una; la absolución o convicción y sentencia bajo alguna de ellas, impedirá todo procedimiento judicial por el mismo acto u omisión, bajo cualquiera de las demás."

*En las circunstancias de este caso procedía el planteamiento de exposición anterior hecho a la Sala sentenciadora. Se revocará la sentencia apelada, se dictará otra ordenando el archivo de este proceso y se decreta la libertad del apelante.*

