EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico | Certiorari |
| Peticionario | |
| v. | 2003 TSPR 161 |
| Aris S. Santiago Pérez | 160 DPR _____ |
| Acusado-recurrido | |

Número del Caso: CC-2002-778

Fecha: 10 de noviembre de 2003

Tribunal de Circuito de Apelaciones:
                    Circuito Regional I

Juez Ponente:
                    Hon. Rafael Ortiz Carrión

Oficina del Procurador General:
                    Lcda. Eva S. Soto Castelló
                    Procuradora General Auxiliar

Abogado de la Parte Recurrida:
                    Lcdo. José F. Aguayo Díaz

Materia: Sección 5-201 de la derogada Ley de Vehículos y
        Tránsito

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        vs.                CC-2002-778    CERTIORARI

Aris S. Santiago Pérez

    Acusado-recurrido

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ PRESIDENTE INTERINO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 10 de noviembre de 2003

El <u>13 de agosto de 2000</u> ocurrió un accidente de tránsito entre un automóvil conducido por Aris S. Santiago Pérez y otro conducido por Rafael Martínez Díaz en el cual resultaron lesionados este último y la señora Viviana Torres Sandoval. A raíz del mismo, el <u>12 de enero de 2001</u> el agente de la policía Carlos L. Ortiz Colón presentó un proyecto de denuncia[1] ante el Tribunal de Primera

---

[1] En lo aquí pertinente la referida denuncia leía de la siguiente manera:

> Aris S. Santiago Pérez . . . ilegalmente mientras conducía el vehículo marca Toyota, modelo Four Runner . . . en

Instancia, Sala Superior de San Juan, contra Aris S. Santiago Pérez por negligencia temeraria al conducir un vehículo de motor en violación de las disposiciones contenidas en la Sección 5-201 de la antigua Ley de Vehículos y Tránsito, Ley Núm. 141 de 20 de julio de 1960, 9 L.P.R.A. sec. 871.[2] Ese mismo día, y en presencia del recurrido Santiago Pérez, se determinó causa probable para el arresto por la referida infracción, citándosele para la celebración del juicio.

Luego de varias suspensiones, el caso fue llamado para juicio el 16 de marzo de 2001, vista a la cual comparecieron el imputado, acompañado por su abogado, y la fiscal Damaris Torres, en representación del ministerio público. Al inicio de la misma, la defensa informó en corte abierta que, durante el mes de enero, una de las

---

dirección de norte a sur por la Carretera 176 intersección con la Carretera 177, Cupey, Río Piedras, que es una vía pública de Puerto Rico, lo hacía con voluntario y malicioso desprecio por la seguridad de vidas y propiedades consistente en que al llegar al lugar de los hechos éste revasó [sic] la luz del semáforo roja . . . dando lugar a que por tal descuido y negligencia impactara con la parte delantera a la parte lateral derecha del vehículo marca Mazda, modelo Protege . . . el cual transitaba en dirección de oeste a este, siendo conducido por Rafael Martínez Díaz. Resultó lesionada la Sra. Viviana Torres Sandoval. . . . Véase, Petición de Certiorari, Anejo II, pág. 15.

[2] Como es sabido, la antigua Ley de Vehículos y Tránsito fue enmendada recientemente por la Ley Núm. 22 de 7 de enero de 2000, 9 L.P.R.A. sec. 5001 et seq., la cual entró en vigor un año después de su aprobación.

víctimas del accidente automovilístico, el Sr. Rafael Martínez Díaz, había fallecido como consecuencia de las lesiones sufridas en el mismo.[3] En virtud de ello el ministerio público solicitó del tribunal un tiempo adicional para revaluar el caso y determinar el curso a seguir. El tribunal de instancia accedió a esta petición y suspendió la vista, reseñalándola para otro día. En ese nuevo señalamiento comparecieron el recurrido, junto a su abogado, y los fiscales Lizette Sánchez y Harry Mansanet. Estos últimos informaron al tribunal que solicitarían la exhumación del cadáver por lo que dicho foro suspendió el acto del juicio, reseñalando el mismo.

El 27 de junio de 2001 el agente Carlos L. Ortiz Colón radicó otras dos denuncias contra el aquí recurrido ante el Tribunal de Primera Instancia, Sala Superior de San Juan, relacionadas las mismas al accidente ocurrido el 13 de agosto de 2000. En una de ellas se le imputó una infracción al Artículo 8.02 (rebasar una luz roja) de la nueva Ley de Vehículos y Tránsito, Ley Núm. 22 de 7 de enero de 2000, 9 L.P.R.A. sec. 5222[4] y, en la otra, se le imputó el delito de dar muerte a una persona al incurrir en imprudencia crasa o temeraria al conducir un vehículo de motor al amparo del Artículo 87 del Código Penal de

---

[3] Es menester señalar que el occiso estuvo hospitalizado antes de morir.

[4] La misma es equivalente a la Sección 1071 de la antigua Ley de Tránsito.

Puerto Rico, 33 L.P.R.A. sec. 4006. Ese mismo día el tribunal determinó causa probable para el arresto con relación a ambas infracciones, ello en presencia del imputado y su abogado. En dicha vista no estuvo presente ninguna persona en representación del Estado. Específicamente, en cuanto a la imputación bajo la Sección 8.02 de la Ley de Tránsito, el tribunal señaló vista para el 18 de julio 2001 y en cuanto a la referente al Artículo 87 del Código Penal, dicho foro citó al imputado para la correspondiente vista preliminar que establece la Regla 23 de Procedimiento Criminal.

Al día siguiente, esto es, el 28 de junio de 2001 se llamó el caso para juicio relacionado a la violación de la Sección 5-201 de la antigua Ley de Tránsito. El Estado estaba representado en dicha vista por la Fiscal Maricarmen Rodríguez. El recurrido, a través de su representación legal, hizo alegación de culpabilidad por la referida infracción. El juez que presidió los procedimientos[5], en atención a lo dispuesto en la Regla 70 de las de Procedimiento Criminal, 34 L.P.R.A. Ap.II R.70, le hizo al recurrido las correspondientes advertencias legales y luego de entender que la alegación fue hecha libre y voluntariamente, la aceptó. Como consecuencia, el tribunal emitió un fallo condenatorio en su contra y

---

[5] Dicho juez fue uno distinto al que presidió la vista de determinación de causa probable para el arresto el día anterior.

dictó sentencia imponiéndole el pago de una multa de ciento cincuenta dólares ($150.00).

Luego de dictada la referida sentencia el recurrido y su abogado abandonaron la Sala apresuradamente. En cuestión de segundos la Fiscal Rodríguez solicitó dirigirse nuevamente al tribunal e informó que acababa de enterarse, por una conversación que tuvo con unos testigos, que el día anterior se había radicado una denuncia contra el recurrido por violación al Artículo 87 del Código Penal y que se había determinado causa probable para el arresto con relación al mismo. Solicitó del tribunal que, ante este cuadro fáctico, reconsiderara el dictamen que minutos atrás emitiera y dejara sin efecto la sentencia. El tribunal ordenó que se citara al imputado y a su representante legal para la celebración de una vista a los fines de discutir la solicitud del ministerio público. Asimismo, ordenó a la Secretaría del Tribunal que no aceptara el pago de la multa.

El 14 de agosto de 2001 se celebró la vista señalada para dilucidar la moción de reconsideración. En la misma el ministerio público reiteró lo solicitado en su moción a los efectos de que el tribunal dejara sin efecto la alegación de culpabilidad y la sentencia. Arguyó que el propósito del imputado, al hacer la alegación de culpabilidad, era evadir ser procesado con relación al Artículo 87 del Código Penal pues se trataba de un delito grave e intentaba levantar la defensa de doble exposición

en cuanto a este último. Por otro lado, la defensa manifestó que el ministerio público pretendía dilucidar el asunto referente a la doble exposición en dicha vista y que ello era improcedente. Aseguró que al hacer la alegación de culpabilidad no había actuado fraudulentamente, sino que "actuó en forma astuta".

Luego de escuchar los argumentos de ambas partes el tribunal de instancia, mediante resolución de 28 de agosto de 2001, procedió a dejar sin efecto la aceptación de la alegación de culpabilidad y la imposición de sentencia; además, ordenó la continuación de los procedimientos señalando vista para el 11 de octubre.[6]

Inconforme con dicho dictamen, Santiago Pérez acudió vía *certiorari* ante el Tribunal de Circuito de Apelaciones alegando, en síntesis, que el foro de instancia no tenía autoridad en Derecho para dejar sin efecto una sentencia válidamente emitida ni para retirar una alegación de culpabilidad luego de haberla aceptado. Arguyó que al así actuar se violó la protección que tiene todo acusado contra la doble exposición.

---

[6] Es menester señalar, que el 26 de octubre de 2001 el tribunal de instancia declaró "ha lugar" una moción presentada por el Ministerio Público al amparo de la Regla 89 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 89, solicitando la consolidación de los casos referentes a las infracciones a las Secciones 5-201 y 8.02 de la Ley de Tránsito con el caso instado al amparo del Artículo 87 del Código Penal en el cual se había pautado juicio para el 9 de noviembre de 2001.

Mediante sentencia emitida el 19 de septiembre y archivada en autos el 24 de septiembre del 2002 el foro apelativo intermedio revocó la resolución emitida por el foro primario y ordenó la restitución de la sentencia de 28 de junio de 2001 que le fue impuesta al recurrido.

Inconforme con la actuación del tribunal apelativo intermedio, el Estado acudió --vía *certiorari*-- ante este Tribunal. Alega que procede revocar la sentencia emitida por el tribunal apelativo debido a que dicho foro incidió:

> ... al revocar la Resolución del Tribunal de Instancia mediante la cual dejó sin efecto una sentencia condenatoria por una infracción menor a la Ley de Vehículos y Tránsito, dictada tras alegación de culpabilidad, al percatarse ese mismo día que el recurrido y su abogado le ocultaron que por los mismos hechos, el día anterior a la vista de alegación de culpabilidad, se había determinado causa probable para arresto o citación en su contra por el delito grave de imprudencia crasa o temeraria ya que el perjudicado había fallecido tiempo después del accidente que originó esta denuncia.

El 25 de noviembre de 2002 expedimos el recurso. Contando con la comparecencia de ambas partes, y estando en posición de resolver el recurso radicado, procedemos a así hacerlo.


I

Un principio básico del acervo jurídico puertorriqueño es que ninguna persona será puesta en riesgo de ser castigada dos veces por el mismo delito. Soto v. Tribunal Superior, 90 D.P.R. 517 (1964); Pueblo v.

Rivera Ramos, 88 D.P.R. 612 (1963). Dicho principio emana de varias fuentes, a saber: de dos garantías constitucionales, la Quinta Enmienda de la Constitución de los Estados Unidos y la Sección 11 de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico; de una disposición estatutaria, el Artículo 63 del Código Penal de Puerto Rico; y también está contenida en una regla procesal criminal como fundamento que permite la desestimación de una denuncia o acusación, Regla 64(e) de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.64.[7]

Por otro lado, la Quinta Enmienda de la Constitución de los Estados Unidos dispone que "no person shall be subject for the same offence to be twice put in jeopardy of life or limb." Esta protección constituye un derecho fundamental aplicable a los Estados de la unión americana

---

[7] La referida Regla reza, en lo pertinente, de la siguiente manera:

> La moción para desestimar la acusación o la denuncia, o cualquier cargo de las mismas sólo podrá basarse en uno o más de los siguientes fundamentos:
> ...
> (e) Que el acusado ha sido convicto, o ha estado expuesto a serlo, o ha sido absuelto. . . .

Por otro lado, resulta pertinente destacar lo dispuesto en el Artículo 6 del Código de Enjuiciamiento Criminal de 1935 a los efectos de que "[n]inguna persona podrá ser procesada por segunda vez por un delito público, después de haber sido ya condenada o absuelta por el mismo delito." 34 L.P.R.A. sec. 6.

y a Puerto Rico a través de la Decimocuarta Enmienda.[8] Lugo Figueroa v. Tribunal, 99 D.P.R. 244, 247 (1970); Benton v. Maryland, 395 U.S. 784 (1969).[9] Nuestra Asamblea Constituyente consagró esta garantía en la Constitución del Estado Libre Asociado de Puerto Rico al disponer que "[n]adie será puesto en riesgo de ser castigado dos veces por el mismo delito". Art. II, Sec. 11, L.P.R.A. Tomo 1.

El propósito de esta disposición constitucional es evitar que el Estado, con todos sus recursos y poderes, abuse de su autoridad y hostigue a un ciudadano con múltiples procedimientos intentando conseguir su convicción por la comisión de una misma conducta delictiva. Así también, lo protege de vivir ansioso e

---

[8] En 1917 el Congreso de los Estados Unidos extendió a Puerto Rico la garantía contra la doble exposición a través del Artículo 2 de la Segunda Ley Orgánica, Acta Jones, 39 Stat. 951 (1917), basado éste, a su vez, en la Quinta Enmienda federal. En el informe de la Comisión de Derechos Civiles de la Convención Constituyente de Puerto Rico se indicó que la intención al incorporar la Sección 11 del Artículo 2 en nuestra Carta de Derechos era asegurar a nuestros ciudadanos los mismos derechos que se habían consagrado bajo el Derecho común. Allí se dijo que dicha "sección contiene las garantías que protegen al acusado en el derecho común. Se expresan en la forma tradicional para incorporar así el significado jurídico que han adquirido en las interpretaciones judiciales." Véase, 4 Diario de Sesiones de la Convención Constituyente 2568-69 (1961). Por tanto, el derecho angloamericano es particularmente relevante para interpretar la cláusula que nos ocupa aunque, claro está, no determina la extensión total de este derecho en nuestra sociedad.

[9] En vista de ello la misma provee el contenido mínimo permisible de protección que los estados y Puerto Rico deben garantizarle a sus ciudadanos. E.L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Colombia, Forum, 1992, V. II, pág. 349.

inseguro en la incertidumbre de que, aun siendo inocente, pueda ser encontrado culpable en cualquier ocasión. Por otro lado, evita que el Estado tenga una segunda oportunidad para presentar prueba y tome ventaja sobre lo aprendido en el primer juicio en cuanto a las fortalezas del caso de la defensa y las debilidades de su propio caso.[10]

La garantía constitucional contra la doble exposición protege al ciudadano en cuatro instancias; a saber: (i) contra ulterior exposición tras absolución por la misma ofensa; (ii) contra ulterior exposición tras convicción por la misma ofensa; (iii) contra ulterior exposición tras exposición anterior por la misma ofensa (tras haber comenzado el juicio, que no culminó ni en absolución ni convicción); y (iv) contra castigos múltiples por la misma ofensa. Pueblo v. Martínez Torres, 126 D.P.R. 561, 568-69 (1990); Ohio v. Johnson, 467 U.S. 493, 498 (1980); Brown v. Ohio, 432 U.S. 161, 165 (1977); North Carolina v. Pearce, 395 U.S. 711, 717 (1969); Wade v. Hunter 336 U.S.

---

[10] Véase: Pueblo v. Martínez Torres, 126 D.P.R. 561, 568 (1990); Plard v. Tribunal, 101 D.P.R. 444, 448 (1973); United States v. DiFrancesco, 449 U.S. 117, 128 (1980); Burks v. United States, 437 U.S. 1, 16 (1978); Green v. United States, 355 U.S. 184, 187-88 (1957); O.E. Resumil, Práctica Jurídica de Puerto Rico: Derecho Procesal Penal, New Hampshire, Ed. Butterworth Legal Publishers, 1993, T. 2, pág. 285.

684 (1949).[11] Esto es, protege no sólo contra castigos múltiples, sino también contra procesos múltiples o sucesivos.

Son varios los requisitos que deben ser satisfechos para poder invocar la cláusula contra la doble exposición. En primer lugar, el procedimiento y la sanción a la que esté sujeto el individuo deben ser de naturaleza criminal o conllevar el estigma o privación de libertad o propiedad que caracterizan al procedimiento criminal. United States v. Halper, 490 U.S. 435 (1989); Resumil, Práctica Jurídica de Puerto Rico: Derecho Procesal Penal, New Hampshire, Ed. Butterworth Legal Publishers, 1993, T. 2, pág. 287; Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y de Estados Unidos, ante, pág. 350. Es preciso, además, que el juicio se haya iniciado o celebrado,[12] que se efectúe bajo un pliego acusatorio válido y en un tribunal con jurisdicción. Pueblo v. Martínez Torres, ante, a la pág. 568. Por último, tiene que existir un segundo proceso en el cual se pretenda procesar al acusado por la misma

---

[11] Véase, además: 5 LaFave, Israel King, Criminal Procedure, 2da. ed., 1999, Sec. 25.1(b), pág. 632; Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y de Estados Unidos, ante, pág. 354.

[12] Sabido es que el juicio se entiende comenzado cuando se le toma el juramento definitivo al jurado en caso de juicio por jurado o cuando se le toma el juramento al primer testigo cuando se trata de juicio por tribunal de derecho. Pueblo v. Martínez Torres, ante, a la pág. 568 citando a Dora Nevares-Muñiz, Sumario de Derecho Procesal Penal Puertorriqueño, 3ra.ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1989, pág. 113.

conducta delictiva por la cual ya fue convicto, absuelto o expuesto. Véase: Pueblo v. Martínez Torres, ante.

El requisito principal para la aplicación de esta garantía es, precisamente, que el segundo proceso se trate de la misma conducta delictiva. Ahora bien, este concepto se ha extendido para proveer protección contra procesos múltiples aun cuando el segundo proceso se refiera a un delito mayor o a un delito menor incluido en el que se le imputó al acusado en el primer proceso. Véase: Brown v. Ohio, ante; Pueblo v. Rivera Ramos 88 D.P.R. 612 (1963); Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y de Estados Unidos, ante, págs. 391-95; Resumil, Práctica Jurídica de Puerto Rico: Derecho Procesal Penal, ante, a la pág. 311-13; 61 A.L.R.2d 1141-1216. A esos efectos hemos sostenido que:

> Para considerar si un delito está subsumido en otro ... el delito menor debe estar comprendido en el imputado, y los hechos expuestos para describir la comisión del delito mayor deben contener las alegaciones que son esenciales para constituir una imputación por el menor. Si el delito mayor incluye todos los elementos de hecho y los requeridos por la ley en relación con el menor, el mayor incluye al menor; pero si el delito menor requiere algún otro elemento indispensable que no es parte del delito mayor, entonces el menor no está comprendido en el mayor. Es decir, el análisis para decidir si un delito está incluido en otro, consiste en determinar si la comisión del primero necesariamente conlleva la comisión del segundo.[13]

---

[13] Véase: Pueblo v. Rivera Ortiz, res. el 2 de marzo de 2000, 2000 TSPR 36; Pueblo v. Oyola Rodríguez, 132 D.P.R. 1064, 1071 (1993).

Por otra parte, además de las garantías constitucionales antes descritas, nuestro ordenamiento jurídico provee una protección adicional mediante el Artículo 63 del Código Penal de Puerto Rico referente al concurso de delitos. El mismo dispone en lo pertinente que:

> [U]n acto u omisión penable de distintos modos por diferentes disposiciones penales, podrá castigarse con arreglo a cualquiera de dichas disposiciones pero en ningún caso bajo más de una.
>
> La absolución o convicción y sentencia bajo alguna de ellas impedirá todo procedimiento judicial por el mismo acto u omisión, bajo cualquiera de las demás. 33 L.P.R.A. sec. 3321 (énfasis nuestro).[14]

De la lectura del mismo se desprende que, en su primer párrafo, esta disposición de ley proscribe la multiplicidad de castigos cuando la misma conducta infringe más de una disposición penal. Pueblo v. Feliciano Hernández, 113 D.P.R. 371, 374 (1982); Pueblo v. Millán Meléndez, 110 D.P.R. 171, 177 (1980). Ahora bien, no prohíbe la acusación, procesamiento y convicción en un mismo juicio por varios delitos que surjan del mismo acto u omisión. Ibid. Por otro lado, en su segundo párrafo protege contra procesos múltiples tras absolución o convicción. Véase, Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y de Estados Unidos, ante, pág. 364. En

---

[14] Este Artículo procede del Artículo 44 del Código Penal de 1937, el cual, a su vez, proviene del Artículo 654 del Código Penal de California.

síntesis, prohíbe: (i) la ulterior exposición tras absolución por el mismo acto u omisión; (ii) la ulterior exposición tras convicción por el mismo acto u omisión y (iii) la imposición de castigos múltiples por el mismo acto u omisión. *Ibid.*, a la pág. 365.

Hemos reconocido, además, que la protección estatutaria al amparo del Artículo 63 resulta ser más beneficiosa para el ciudadano que la garantía constitucional. Ello porque en dicho Artículo se hace referencia a "un mismo acto u omisión" en vez de a un "mismo delito u ofensa". A esos efectos expresamos en González Zayas v. Tribunal, 100 D.P.R. 136 (1971) que:

> Esta disposición tiene un alcance mayor que el de proteger a un acusado de la doble exposición que veda la Constitución del Estado Libre Asociado, sino que lo protege de que por un solo acto punible se le castigue más de una vez. No debe confundirse con la garantía constitucional.
> ...
> [S]e evita además que pueda hostigársele y perseguírsele, acusándolo de distintos delitos, luego de haber sido ya procesado por uno, en circunstancias en que no procede la defensa de exposición anterior por tratarse de delitos distintos. *Ibid.* a las pág. 140 (énfasis nuestro).

De este modo, tenemos que a los fines de determinar si aplica la defensa de concurso de delitos hay que atender a la unicidad del acto. Véase: Pueblo v. Meléndez Cartagena, ante, a las págs. 344-45. Esto es, cuando una misma actuación infrinja simultáneamente varias disposiciones legales aplicará la protección de concurso de delitos. Como consecuencia, en caso de que el ciudadano

sólo sea acusado al amparo de una o algunas de ellas y salga absuelto o convicto de éstas, el Estado estará vedado de iniciar un proceso posterior contra el acusado por otros delitos que hayan surgido a raíz de la misma actuación u omisión.

Asimismo hemos sostenido que el "acto u omisión" al que allí se hace referencia no sólo comprende un acto físico único, sino también, en determinadas circunstancias, un mismo curso de acción. Tampoco se limita a delitos que estén incluidos o que sean parte o ingrediente de otros. Pueblo v. Meléndez Cartagena, ante, a la pág. 345 y casos allí citados; González Zayas v. Tribunal, ante, a las págs. 143-44.

Expresados estos conceptos generales, pasamos a examinar la controversia de autos.


II

En el presente caso, el recurrido, a sabiendas de que el día anterior se había determinado causa probable para el arresto en virtud de una denuncia presentada en su contra bajo el Artículo 87 del Código Penal y que, tanto el juez que presidía, como el fiscal que estaba presente en el juicio por la infracción de la Sección 5-201 de la antigua Ley de Tránsito desconocían ese hecho, "astutamente", en palabras de su abogado defensor, hizo alegación de culpabilidad por dicha infracción y obtuvo una sentencia de convicción. Ahora se queja de la

actuación del tribunal de instancia al dejar sin efecto la referida sentencia y al ordenar la continuación de los procedimientos al amparo de esta misma infracción de tránsito; proceso que posteriormente fue consolidado con los casos instados contra el acusado, por los mismos hechos, bajo el Artículo 87, ante, y el Artículo 8.02 de la nueva Ley de Tránsito. El recurrido arguye que dicho proceder tiene el efecto de exponerlo a procesos múltiples en violación a su derecho a no ser expuesto dos veces a ser juzgado y castigado por el mismo delito.

Como mencionamos previamente, una de las instancias en que opera la protección contra la doble exposición y el concurso de delitos es cuando el primer proceso culmina en convicción. En el presente caso, en efecto, hubo una sentencia de convicción contra el acusado por la infracción de la Sección 5-201 de la antigua Ley de Tránsito. Ahora bien, la misma no se produjo luego de un desfile de prueba en un juicio ordinario, sino que estuvo apoyada en una alegación de culpabilidad proferida por el acusado al inicio del juicio.

Procede que nos cuestionemos, en primer lugar, si dentro de este contexto se activó la protección contra la doble exposición. En caso de contestar dicha interrogante en la afirmativa, habría que resolver, en segundo término, si en las circunstancias particulares del presente caso, el Estado está impedido de proseguir con el procesamiento

del acusado por las infracciones penales que le fueron imputadas.

A

Sabido es que al emitir una alegación de culpabilidad el acusado no sólo afirma haber realizado los actos descritos en la denuncia en su contra, sino que, además, acepta y admite que es culpable del delito objeto de su alegación. United States v. Broce, 488 U.S. 563, 570 (1989). Como consecuencia de lo anterior, se ha entendido que una alegación de culpabilidad constituye una convicción en sí misma con carácter concluyente que no le deja al tribunal más por hacer que no sea emitir el fallo y la sentencia. Kercheval v. United States, 274 U.S. 220, 223 (1927); véase, además: Morris v. Reynolds, 264 F.3d 38, 48-49 (2do. Cir., 2001); United States v. Smith, 912 F.2d 322, 324-25 (9no. Cir., 1990); C. Torcia, Wharton's Criminal Procedure, 13ma. ed., New York, Ed. Lawyers Cooperative Publishing, 1990, Vol. 2, sec. 311, pág. 344. A esos efectos el Tribunal Supremo de los Estados Unidos ha expresado que "[a] plea of guilty and the ensuing conviction comprehend all the factual elements necessary to sustain a binding, final judgment of guilt and a lawful sentence" United States v. Broce, ante, a la pág. 569.

En vista de que una convicción basada en la aceptación del tribunal de una alegación de culpabilidad conlleva las mismas consecuencias que un veredicto de

culpabilidad emitido por un jurado o que un fallo condenatorio de un juez, se ha resuelto que la protección contra la doble exposición se activa o "attaches" una vez el tribunal acepta la alegación de culpabilidad y dicta sentencia a base de ella.[15] Esto es así ya que una alegación de culpabilidad tiene el efecto de una convicción por el delito objeto de la alegación. United States v. Smith, ante, a la pág. 324. Cónsono con lo anterior, se ha sostenido como norma general que "a former conviction on a plea of guilty is generally sufficient to sustain a defense of double jeopardy in a subsequent prosecution for the same offense". 75 A.L.R.2d 683 sec. 3; véase, además: Kring v. State of Missouri; 107 U.S. 221 (1883); Grady v. Corbin, 495 U.S. 508 (1990); U.S. v. Jerry, 487 F.2d 600 (3er. Cir., 1973); 21 Am.Jur.2d Criminal Law, sec. 320. Por tanto, una vez un acusado es convicto por un delito a base de una alegación de culpabilidad el Estado queda impedido, como norma general, de volverlo a encauzar criminalmente  por dicho delito.

---

[15] Véase: United States v. Santiago Soto, 825 F.2d 616, 618 (1er. Cir., 1987); Morris v. Reynolds, ante, a la pág. 49; United States v. Fransaw, 810 F.2d 518, 523 (5to. Cir., 1987); United States v. Bearden, 274 F.3d 1031, 1036 (6to. Cir., 2001); Bally v. Kemna, 65 F.3d 104 (8vo. Cir., 1995); United States v. Smith, ante, a la pág. 324; United States v. Combs, 634 F.2d 1295 (10mo. Cir., 1980); United States v. Baggett, 901 F.2d 1546, 1548 (11mo. Cir., 1990); LaFave, Israel & King, Criminal Procedure, ante, sec. 25.1(d), pág. 642; Torcia, Wharton's Criminal Law, 15ta.ed., sec. 57; Witkin & Epstein, California Criminal Law, 2d.ed., California, Bancroft-Whitney, 1988, Vol. 1, sec. 302, pág. 347; 75 A.L.R.2d. 683, sec. 2; 21 Am.Jur.2d, Criminal Law, sec. 337, pág. 387.

Como señalamos anteriormente, la convicción o absolución en un primer proceso por un delito menor impide un proceso criminal posterior por el delito mayor. Brown v. Ohio, ante; Pueblo v. Rivera Ramos, ante. En términos generales, dicha norma aplica de igual modo, a los casos en que la convicción se hizo mediante una alegación de culpabilidad por el delito menor incluido. Véase: Pueblo v. Rivera Ramos, ante; Grady v. Corbin, ante; Brown v. Ohio, ante; Witkin & Epstein, California Criminal Law, ante, sec. 326, pág. 378; 21 Am.Jur. 2d, Criminal Law, sec. 352.

No obstante lo anterior, la referida norma tiene una amplia gama de excepciones que permiten al Estado procesar al acusado nuevamente tanto por el mismo delito por el cual aceptó su culpabilidad, como por un delito mayor a ese. Ello así ya que la protección contra la doble exposición no es absoluta ni automática, atendiendo el interés que tiene la sociedad de que se le brinde al ministerio público una oportunidad adecuada para procesar a aquellos que violan la ley y así impedir que la comisión de delitos quede impune. Véase: Ohio v. Johnson, ante, a la pág. 502; Arizona v. Washington, 434 U.S. 497, 509 (1978).

Una de las excepciones que permite el encauzamiento posterior por un delito mayor se presenta cuando los elementos necesarios para configurar el delito mayor no han ocurrido al momento en que comienza el proceso contra

el acusado por el delito menor, ni previo a que se emita el fallo y la sentencia. Garrett v. United States, 471 U.S. 773, 791 (1985); Jeffers v. United States, 432 U.S. 137, 151-52 (1977); Brown v. Ohio, ante, a la pág. 169 n.7; Díaz v. United States, 223 U.S. 442, 448-449 (1912); State v. Mitchell, 682 S.W.2d 918-920 (Tenn., 1984); véase, además: Witkin & Epstein, California Criminal Law, ante, sec. 326.

En Pueblo v. Rivera Ramos, ante, al explicar que el encauzamiento posterior por el delito mayor estaba impedido por razón de que el elemento agravante que permitió que el mismo se configurara ocurrió antes de la convicción por el delito menor, expresamos que:

> El hecho nuevo que sobrevino...no lo fue después de la condena, ni tampoco en el interín entre los dos procesos, ni fue un hecho adicional intermedio. . . .
> . . . .
> En las circunstancias de este caso, en que entre el primer y segundo delitos imputados no existe otro ingrediente distinto sino el de la muerte de la persona agredida, habiendo ocurrido dicha muerte antes de la condena en el proceso anterior, por lo que el apelante ya había perpetrado el delito de homicidio a la fecha de ese proceso y condena, es de aplicación lo dispuesto en el [Articulo 63 del Código Penal]. *Ibid.* a las págs. 628-30 (énfasis nuestro).[16]

---

[16] En dicho caso el apelante fue denunciado por el delito de acometimiento y agresión grave. Éste hizo alegación de culpabilidad por dicho delito y el tribunal procedió a dictar sentencia de convicción en su contra condenándolo a cumplir cuarenta días de cárcel. Adviértase que no fue sino luego de dictada la sentencia y de cumplida la misma que el ministerio público presentó, contra el apelante, la acusación por el delito mayor de homicidio voluntario a base de los mismos hechos. En vista de que la muerte de la víctima ocurrió antes de que se dictara la sentencia de

(Continúa . . .)

Otra de las excepciones ocurre cuando los hechos necesarios para que se configure el delito mayor no son descubiertos por el ministerio público antes de la celebración del juicio por el delito menor, ello a pesar de su buena fe y de haber ejercido la debida diligencia. Véase: United States v. Jeffers, ante, a la pág. 152; Brown v. Ohio, ante, a la pág. 169 n.7; State v. Mitchell, ante, a la pág. 920; Witkin & Epstein, California Criminal Law, ante, sec. 326. Esta instancia tampoco impide el encauzamiento posterior por el delito mayor.

Asimismo, cuando el acusado expresamente solicita la celebración de juicios separados por un delito menor y otro mayor que surgen de los mismos hechos, o si se opone a la consolidación de los juicios sin levantar en ningún momento que uno de los delitos está incluido en el otro, el Estado no estará impedido de iniciar un procedimiento criminal por el delito mayor. Jeffers v. United States, ante, a la pág. 152; véase, además: Ohio v. Johnson, 467 U.S. 493, 502 (1984); Witkin & Epstein, California Criminal Law, ante, sec. 326. De igual modo, cuando el propio acusado, luego de emitir una alegación de culpabilidad, la retira, o si a instancia suya logra que el tribunal retire la alegación no existirá impedimento

_____

convicción por agresión y de que no hubo fraude por parte del acusado al hacer su alegación de culpabilidad por el delito menor resolvimos que, en virtud de la doctrina del concurso de delitos, el Estado estaba impedido de proseguir con el encauzamiento por el delito de homicidio voluntario.

para continuar con el procedimiento criminal por el mismo delito o por uno mayor. United States v. Dyer, 136 F.3d 417 (5to. Cir., 1998); United States v. Anderson, 514 F.2d 583 (7mo. Cir., 1975); United States v. Jerry, 487 F.2d 600 (3er. Cir., 1973); véase, además: 21 Am.Jur.2d., Criminal Law, sec. 416.

Otra excepción importante y de suma pertinencia al caso de autos fue establecida en Ohio v. Johnson, ante, caso que se distingue, además, por pautar la norma a los efectos de que un acusado no tiene derecho a utilizar la defensa contra la doble exposición como una espada para impedir el procesamiento criminal. *Ibid*. a la pág. 502. En dicho caso se estableció que si al momento en que el tribunal acepta una alegación de culpabilidad por un delito menor, ya están pendientes o "pending" los cargos por el delito mayor --a raíz de unos mismos hechos-- no opera la prohibición contra la doble exposición y el Estado puede continuar el procedimiento criminal por el delito mayor. Ello en vista de que dicha aceptación por parte del tribunal no equivale a la llamada "absolución implícita" que conlleva un veredicto que condena al acusado por el delito menor luego de que el jurado es instruido a considerar tanto el delito mayor como el menor incluido. *Ibid*. a las págs. 501-02. A esos efectos el Tribunal Supremo de los Estados Unidos manifestó que:

> There simply has been none of the governmental overreaching that double jeopardy is supposed to prevent. On the other hand, ending prosecution

now would deny the State its right to one full and fair opportunity to convict those who have violated its laws. *Ibid.* a la pág. 502.

Por otro lado, también se ha reconocido otra excepción que permite al Estado continuar un proceso posterior por un delito aun cuando el mismo surgió de unos hechos que previamente habían producido una sentencia de convicción a base de una alegación de culpabilidad por otro delito. Dicho proceder es permitido cuando el fiscal que presentó los cargos posteriores no tiene conocimiento --por no habérsele notificado-- de los cargos que previamente se habían presentado contra el acusado y por los cuales éste había resultado convicto. Véase: People v. Bressette, 259 N.E.2d 592 (Ill.App., 1970); Edwards v. Commonwealth, 25 S.W.2d 746, 748 (Ky.App., 1930) A esos efectos se ha manifestado que "a former prosecution [is not a] bar where it was obtained by the defendant without knowledge of the prosecuting official or aggrieved party and for the purpose of avoiding the sentence which might otherwise be imposed." Torcia, Wharton's Criminal Law, ante, sec. 58 y casos allí citados (énfasis nuestro).

Esto nos lleva a otra excepción que ha sido ampliamente reconocida y que permite procesos posteriores por el delito mayor e inclusive por el mismo delito por el cual previamente el acusado ha sido convicto luego alegarse culpable. Esta es, la comisión de fraude,

connivencia o colusión en la convicción anterior.[17] Cuando

estos elementos permean la convicción anterior, no aplica

la protección contra la doble exposición y la alegación de

culpabilidad hecha por el acusado se entiende carente de

todo efecto. Véase: Serfass v. United States, 420 U.S. 377

(1975); People v. Malveaux, 59 Cal.Rptr. 2d 371 (Cal.App.,

1996); People v. Hartfield, 90 Cal.Rptr. 474 (Cal.App.,

1970); People v. McDaniels, 69 P. 1006 (Cal., 1902);

véase, además: 19 Cal.Jur.3d, Criminal Law: Defenses, sec.

---

[17] Véase: Pueblo v. Rivera Ramos, ante; Taylor v.
Kincheloe, 920 F.2d 599 (9no. Cir., 1990); United States
v. Quiñones, 906 F.2d 924 (2do. Cir., 1990); People v.
Malveaux, 59 Cal.Rptr.2d 371 (Cal.App., 1996); People v.
Aleman, 667 N.E.2d 615 (Ill.App., 1996); State v. Bally,
869 S.W.2d 777 (Mo.App., 1994); Rivera v. State, 716
S.W.2d 68 (Tex.App., 1986); People v. Kurtz, 495 N.Y.S.2d
608 (N.Y.Co.Ct, 1985); People v. Warden, 477 N.Y.S.2d 332
(N.Y.App., 1984); People v. Daby, 392 N.Y.S.2d 325
(N.Y.App., 1977); State v. Nardone, 334 A.2d 208 (R.I.,
1975); Bernard v. State, 481 S.W.2d 427 (Tex.App., 1972);
People v. Hartfield, 90 Cal.Rptr. 274 (Cal.App., 1970);
People v. Bressette, 259 N.E.2d 592 (Ill.App., 1970);
State v. Bell, 260 A.2d 849 (N.J., 1970); Hampton v.
Municipal Court, 51 Cal.Rptr. 760 (Cal.App., 1966); Kellet
v. Superior Court, 409 P.2d 206 (Cal., 1966); People v.
Lavon, 243 Cal.App.2d 644 (Cal.App., 1966); State v.
Howell, 66 S.E.2d 701 (So.Cal., 1951); Edwards v.
Commonwealth, 25 S.W.2d 746 (Ky.App., 1930); Halbert v.
State, 195 P. 504 (Okla.App., 1921); Beasley v. State, 208
S.W. 538 (Tex.App., 1917); State v. Dockery, 89 S.E. 36
(N.C., 1916); Teague v. Commonwealth, 189 S.W. 908
(Ky.App., 1916); State v. Ketchum, 167 S.W. 73 (Ark.,
1914); Richards v. State, 157 S.W. 141 (Ark., 1913); State
v. Caldwell, 66 S.W. 150, (Ark. 1902); People v. Woods, 23
P. 1119 (Cal., 1890); McFarland v. State, 32 N.W. 226
(Wis., 1887); State v. Simpson, 9 N.W.78 (Minn., 1881);
State v. Bell, 81 N.C. 591 (N.C., 1879); State v. Green,
16 Iowa 239 (1864); Supreme Court v. Reed, 26 Conn. 202
(1857); 19 Cal.Jur.3d, Criminal Law: Defenses, sec. 73;
Witkin & Epstein, California Criminal Law, ante, secs.
335-36; 75 A.L.R.2d 683, sec. 4; 21 Am.Jur.2d., Criminal
Lawq, sec. 335.

73. A esos efectos, debe destacarse el hecho de que este Tribunal en Pueblo v. Rivera Ramos, ante, haciéndose eco de la doctrina norteamericana, manifestó que "si la condena anterior se obtuvo mediante fraude, connivencia o colusión del acusado, este hecho la vicia, y no impide una acusación posterior". *Ibid*. a la pág. 622.

Una de las instancias más comunes en la que media fraude ocurre cuando el acusado, mediante una alegación de culpabilidad por un delito menor, procura ser procesado y convicto por el mismo con el propósito de impedir el encauzamiento criminal por el delito mayor a base de los mismos hechos. A esos efectos se ha manifestado que "[a] defendant could not choose to plead responsible to minor infraction and thereby evade prosecution for more serious criminal offense." State v. Hamrick, 428 S.E.2d 830, 834 (N.C.App., 1993). "Where defendant perpetrates fraud on the court to obtain a conviction on a lesser charge ... the subsequent trial of the defendant is not barred by double jeopardy." 19 Cal.Jur.3d, Criminal Law: Defenses, sec. 73; véase, además: 75 A.L.R.2d. 683, sec.4; 21 Am.Jur.2d., Criminal Law, sec. 335 y casos allí citados.

A modo de ejemplo, resulta ilustrativo el caso de People v. Hartfield, 90 Cal.Rptr. 274 (Cal.App., 1970) en donde el acusado, estando pendiente la vista del caso por el delito grave en el tribunal superior, compareció al tribunal municipal e hizo una alegación de culpabilidad por el delito menor de conducir temerariamente ("reckless

driving"). El tribunal resolvió, al amparo de la Sección 654 del Código Penal de California --de donde proviene el Artículo 63 de nuestro Código Penal-- que en vista de que el acusado había incurrido en fraude tratando de impedir el procesamiento por el delito mayor no estaba protegido contra la doble exposición.[18]

---

[18] Es pertinente destacar las siguientes expresiones hechas por el Tribunal en dicho caso:

> Where the issue is multiple prosecution, the provisions of section 654 cannot be employed to mislead the court. Thus, if a greater violation is concealed in order to gain 'immunity' by prosecution for a lesser crime, section 654 will not apply.
> ....
> The situation with which we are presented is this. Defendant is claiming the benefit of a statute designed to prevent harassment by the government of a criminally accused. Yet, here, both prosecutions were pending prior to the trial of either, and this was fully known to defendant, for the preliminary hearing of the felony case was held in his presence of June 13, three days before his first appearance in the municipal court on the misdemeanor charges. Defendant could at any time have avoided any harassment by moving for consolidation of the charges . ... This he chose not to do.
>
> Even after he had pleaded guilty to the reckless driving charge on July 15, the felony prosecution was not prohibited, for, under the statute, successive prosecution is only prohibited after conviction and sentence.
> ....
> Undoubtedly, if defendant had disclosed to the court the pendency of the felony charges, the imminency of their trial and his purpose in requesting that the pronouncement of judgment be advanced on calendar, the court would have denied the advancement and withheld pronouncement of judgment pending trial of the felony charges. Further, there is nothing in the record indicating that the district attorney was

(Continúa . . .)

Igualmente, en United States v. Quiñones, 906 F.2d 924 (2do. Cir., 1990), una vez el acusado se enteró de que próximamente se iba a presentar una segunda denuncia imputándole un tercer delito a raíz de unos mismos hechos, éste, para sorpresa del fiscal, hizo alegación de culpabilidad por los delitos menores que se le habían imputado en la denuncia original. Cuando se presentó la segunda denuncia el acusado pidió la desestimación de la misma a base de que se le estaba violando su derecho contra la doble exposición. El tribunal resolvió que "appellant's attempt to use double jeopardy as a sword involved an affirmative misrepresentation to the government by defense counsel. Under these circumstances, we do not believe that double jeopardy principles bar the superseding indictment." *Ibid*. a la pág. 928.

Por otro lado, en State v. Bally, 869 S.W.2d 777 (Mo.App., 1994), se resolvió que un acusado no puede utilizar la garantía contra la doble exposición como una espada para alegarse culpable por el delito menor de conducir en estado de embriaguez a los fines de impedir el encauzamiento criminal posterior por el delito grave de homicidio. Asimismo, en Hampton v. Municipal Court, 51 Cal.Rptr. 760 (Cal.App., 1966), se estimó que no aplicaba

---

notified of the advancement of the pronouncement of judgment on calendar or that he was represented at that proceeding. *Ibid*. a la pág. 279 (énfasis nuestro y citas omitidas).

la protección contra la doble exposición ni la protección provista en la Sección 654 del Código Penal de California. En dicho caso la convicción del acusado por manejar sin licencia de conducir fue obtenida por fraude cuando éste, a espaldas del fiscal, se declaró culpable por dicho delito ello con el propósito expreso de impedir el encauzamiento por delito mayor. Considerando una situación parecida a las que hemos descrito, el Tribunal Superior de California, en Kellet v. Superior Court, 409 P.2d 206 (Cal., 1966), entre otras cosas, sostuvo:

> In such situations the risk that there may be a waste and harassment through both a misdemeanor and felony prosecution may be outweighed by the risk that defendant guilty of a felony may escape proper punishment. Accordingly, in such cases section 654 does not bar a subsequent felony prosecution. . . . *Ibid*. a la pág. 210.

En casos como estos donde la alegación de culpabilidad ha sido hecha, de manera astuta y con el fin fraudulento de impedir ser procesado por un delito mayor originado de la misma actuación criminal, se ha entendido que los tribunales poseen la facultad de anular la sentencia de convicción y restaurar los cargos originales. Véase: People v. Kurtz, 495 N.Y.S.2d 608 (N.Y., 1985); People v. Warden, 477 N.Y.S.2d 332 (N.Y., 1984). Ello en vista de que una convicción obtenida por fraude es nula y los tribunales tienen poder inherente de corregir y dejar sin efecto aquellas sentencias criminales obtenidas a través de fraude o falsa representación. Hazle-Atlas Glass

Co. v. Hartford-Empire Co., 322 U.S. 238, 248 (1944); United States v. Bishop, 774 F.2d 771, 774 (7mo. Cir., 1985); People v. Malveaux, ante.[19] Siendo nula la sentencia de convicción no habrá impedimento para que se lleve a cabo un procedimiento posterior por todos los cargos. Esta normativa responde al valioso principio de que "[l]egal proceedings must be...'not only without wrong, but above suspicion.'"[20]


## III

En el presente caso, no hay duda de que tanto bajo la garantía constitucional contra la doble exposición como bajo lo dispuesto en el Artículo 63, ante, la infracción de la Sección 5-201 de la antigua Ley de Tránsito,[21] por imprudencia y negligencia temeraria al conducir un vehículo de motor, constituye un delito menor subsumido en el delito de dar muerte a una persona al incurrir en imprudencia crasa y temeraria al conducir un vehículo de motor establecido en el Artículo 87 del Código Penal. El

_____

[19] Véase, además: State v. Caldwell, ante; People v. Woods, ante; Supreme Court v. Reed, ante.

[20] Véase: State v. Dockery, ante (énfasis nuestro).

[21] Dicha infracción penalizaba a "[t]oda persona que conduzca un vehículo de motor de manera descuidada y atolondrada, despreciando desconsideradamente los derechos y la seguridad de otras, o sin el debido cuidado y circunspección, o de una manera que ponga o pueda poner en peligro las vidas o propiedades, o que mediante el manejo negligente de un vehículo de motor causare daño a otra persona..." Ley Núm. 141 de 20 de julio de 1960, sec. 5-201, Leyes de Puerto Rico, pág. 468.

único elemento que distingue a un delito del otro lo es el hecho de la muerte requerido en el Artículo 87. Sin embargo, no hay duda de que al cometer el delito dispuesto en el Artículo 87 se comete el estatuido por la Sección 5-201 de la antigua Ley de Tránsito. Es por ello que de primera instancia aparentan ser de aplicación las protecciones contra la doble exposición.

También es indiscutible que en el presente caso el juicio por el delito menor comenzó. Inclusive el mismo culminó con una sentencia de convicción por la referida infracción de tránsito. Dicha convicción se hizo a raíz de una alegación de culpabilidad presentada por el acusado y aceptada por el tribunal luego de hechas las advertencias correspondientes. Como mencionamos previamente, una vez el Juez aceptó la alegación de culpabilidad y dictó sentencia a base de ella, se activó la protección contra la doble exposición.

No obstante lo anterior, se desprende de los hechos particulares del presente caso, no una, sino varias de las excepciones previamente descritas que permiten al Estado continuar el procedimiento criminal contra el acusado, no sólo por los delitos al amparo del Artículo 87 del Código Penal y el Artículo 8.02 de la Ley de Tránsito, sino también por la misma infracción por la que éste se declaró culpable.

En primer lugar, es importante notar que en el caso de marras los cargos por el delito mayor fueron

presentados cuando aún no se había emitido sentencia de convicción por el delito menor. Es por ello que aun cuando el elemento agravante de la muerte ocurrió previo a la convicción por el delito menor, no podemos resolver tal como se hizo en Pueblo v. Rivera Ramos, ante, para impedir el procesamiento por el delito mayor. En dicho caso, a pesar de que el delito de homicidio se había configurado antes de la convicción por el delito de agresión, el Estado esperó a que se dictara sentencia y se cumpliera la misma para entonces presentar los cargos por el delito mayor a base de los mismos hechos. En ese contexto, resultaba claro que aplicaba la prohibición contra la doble exposición y la defensa del concurso de delitos.

Por el contrario, en el caso de marras los cargos por el delito mayor se presentaron a tiempo; esto es, cuando todavía no había culminado el proceso anterior por el delito menor y, más importante aún, cuando todavía no había recaído una sentencia de convicción. Como consecuencia, el acusado nunca estuvo sujeto al riesgo que tanto la garantía constitucional contra la doble exposición como el segundo párrafo del Artículo 63, ante, intentan evitar. Por estas mismas razones, resulta aplicable la excepción establecida en el caso de Ohio v. Johnson, ante, a los efectos de que si al momento en que el tribunal acepta la alegación de culpabilidad por el delito menor ya están pendientes o "pending" los cargos por el mayor, no opera la defensa contra la doble

exposición. Cuando el tribunal aceptó la alegación de culpabilidad del acusado por la infracción de tránsito ya se habían presentado y estaban "pending" los cargos al amparo del Artículo 87, ante. Por tanto, el proceso criminal por dicho delito no está vedado.

Otra de las excepciones aplicables al caso de autos es la relativa al <u>desconocimiento del fiscal de sala de los cargos bajo el Artículo 87 que el día anterior un agente de la policía había presentado en contra del acusado</u>. No fue sino luego de dictada la sentencia de convicción que éste se enteró de lo acontecido, por información que obtuvo de unos testigos pocos minutos después de que se dictara sentencia. Fue entonces que inmediatamente se dirigió al Juez para informarle lo sucedido y solicitó la reconsideración de la sentencia recientemente dictada.

Por otro lado, y lamentable por demás, resulta ser la situación de que, en el presente caso, la actuación de la defensa —denominada por ella misma como "astuta"— raya en lo fraudulento. La "estrategia" de la defensa al hacer una alegación de culpabilidad <u>a sabiendas</u> de que el día anterior se habían presentado cargos por un delito mayor originado por los mismos hechos, y de que el fiscal y el juez desconocían de ello[22], <u>es a todas luces inapropiada</u>.

---

[22] Es importante recordar que <u>los cargos por el delito mayor no fueron radicados por el fiscal que representó al Estado en el juicio en que el acusado hizo alegación de</u>

(Continúa . . .)

A ello se le une el agravante de que la defensa ni siquiera informó al fiscal y, peor aún, al juez, de lo ocurrido el día anterior. Dicha actuación denota claramente la intención de la defensa de manipular el procedimiento criminal a su conveniencia con la intención de crear un obstáculo para impedir el encauzamiento criminal por los cargos que se radicaron el día anterior al juicio por la infracción de tránsito. Intentó utilizar la defensa de la doble exposición como espada para impedir el procedimiento criminal. Como consecuencia, aplica la norma discutida a los efectos de que cuando un acusado intenta diversas estratagemas para que se dicte sentencia en el caso menos grave con el fin de argumentar luego que ello impide un juicio posterior por el delito grave, éste no estará amparado por la protección que ofrece la garantía contra la doble exposición ni por la provista por el Artículo 63 en su segundo párrafo. People v. Hartfield, ante; Kellet v. Superior Court, ante.

En este contexto, resulta aplicable al presente caso lo expresado en Pueblo v. Nieves Santana, 63 D.P.R. 532 (1944), a los efectos de que:

culpabilidad, sino que éstos fueron presentados por un agente de la policía. Además, el Juez que presidió el juicio por la infracción de tránsito no fue el mismo que presidió la vista de determinación de causa probable por el arresto del acusado bajo el delito dispuesto en el Artículo 87. Por otro lado, ningún representante del ministerio público estuvo presente en la referida vista determinación de causa probable.

> [E]l abogado del apelado admitió en la vista oral que él no informó al juez de la corte municipal al celebrarse el juicio por acometimiento y agresión grave en cuanto al hecho de que se había radicado una acusación por el delito de asesinato en la corte de distrito. <u>Consideramos que sin faltar a sus deberes para con el acusado, como funcionario de la corte debió haberlo hecho.</u> *Ibid.* a la pág. 535 (énfasis nuestro).

La defensa del acusado, previo a someter la alegación de culpabilidad por la infracción de tránsito, <u>debió</u> informarle al tribunal que el día anterior se habían presentado en contra del acusado nuevos cargos a base de los mismos hechos y que se había determinado causa probable para el arresto en cuanto a éstos. Al así no hacerlo, indujo al tribunal a error y permitió que el mismo emitiera una sentencia sin tener conocimiento de todos los elementos necesarios para emitir una decisión informada. Incluso, ocasionó que, posteriormente, cuando el tribunal advino en conocimiento de lo ocurrido, procediera a dejar sin efecto la referida sentencia. Ahora <u>no puede</u> la defensa del acusado quejarse de una situación que ella misma creó.

Al actuar de este modo la defensa del acusado incumplió con los deberes de sinceridad y honradez que lo obligan a no "utilizar medios que sean inconsistentes con la verdad" y que le prohíben "inducir al juzgador a error utilizando artificios o una falsa representación de los hechos..." Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap.IX C.35; véase, además: *In re* Díaz Ortiz, res.

el 29 de febrero de 2000, 2000 TSPR 53; Colón v. J.C.A., res. el 25 de junio de 1999, 99 TSPR 118; *In re* Parrilla, 145 D.P.R. 536 (1998). El deber de desempeñarse capaz y diligentemente no significa que un abogado pueda realizar cualquier acto que le sea conveniente con el propósito de triunfar en la causa del cliente, pues la misión del abogado no le permite que en defensa de un cliente viole la ley ni cometa un engaño. Véase: *In re* Díaz Ortiz, ante.

A tenor con lo antes expuesto, resulta forzoso concluir que la actuación de la defensa ejemplifica el tipo de conducta fraudulenta que, conforme a la norma esbozada, no impide al Estado continuar los procedimientos por todos los cargos que se le imputaron al acusado, inclusive por la infracción a la Sección 5-201 por el cual éste se había declarado culpable. No hay duda, en consecuencia, que el tribunal de instancia, dentro de su facultad de reconsiderar sus fallos y sentencias, al amparo de las disposiciones de la Regla 216 de Procedimiento Criminal,[23] actuó correctamente al dejar sin efecto tanto la alegación de culpabilidad como la sentencia de convicción. Dicho proceder, y la continuación de los procedimientos consolidados por los tres cargos que se presentaron contra el acusado, en las circunstancias del presente caso, no somete a éste a doble exposición ni

---

[23] Véase: 34 L.P.R.A. Ap. II, R. 216; Pueblo v. Valdés Sánchez, 140 D.P.R. 490 (1996).

infringe el segundo párrafo del Artículo 63 sobre concurso de delitos.[24]

Por último, debemos recordarle al abogado defensor del recurrido que el proceso criminal no es lidia deportiva para determinar cuál es el mejor de los gladiadores. Los tribunales de justicia no existen para dilucidar competencias ni batallas de talento entre abogados y fiscales, sino que su propósito cardinal es el descubrimiento de la verdad.[25] Es por ello que ante el Tribunal hay que acudir con las manos limpias y el que triunfe debe ser aquel a quien le asista la razón; y no el que pretenda o resulte ser el más listo o el más "astuto". No olvidemos que "[t]an malo es la ventaja hacia el Ministerio Fiscal como hacia la defensa. 'La justicia debe ser igual para todos.'" Pueblo v. Guzmán Camacho, 116

---

[24] Resulta importante destacar las expresiones de este Tribunal en Pueblo v. Ruiz González, 66 D.P.R. 198 (1946), cuando manifestó:

> No erró la corte inferior al declarar sin lugar la defensa de exposición anterior. La resolución del Juez... dejando sin efecto la alegación de culpabilidad y la convicción del acusado fue en efecto una declaración de nulidad de todo lo actuado y la concesión de un nuevo juicio. Los derechos substanciales del acusado no fueron afectados en modo alguno y quedaron debidamente protegidos. Ibid. a la pág. 201 (énfasis nuestro).

[25] Véase: Pueblo v. Pérez Velázquez, 147 D.P.R. 777, 791 (1999); Pueblo v. Morales Rivera, 118 D.P.R. 155, 160 (1986); Lluch v. España Service Sta., 117 D.P.R. 729, 743 (1986); Pueblo v. Tribunal Superior, 92 D.P.R. 116, 126 (1965); Shell Co. (P.R.) Ltd. v. Tribl. de Distrito, 73 D.P.R. 451, 461 (1952).

D.P.R. 34, 38 (1985); Pueblo v. García, 32 D.P.R. 727, 731 (1924).


                                    IV

En mérito de lo antes expuesto se revoca la actuación del Tribunal de Circuito de Apelaciones, en el presente caso, y se devuelven los autos al Tribunal de Primera Instancia para que continúen los procedimientos de conformidad con lo aquí dispuesto.

Se dictará Sentencia de conformidad.


                            FRANCISCO REBOLLO LÓPEZ
                            Juez Presidente Interino

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

    Peticionario

        vs.                CC-2002-778     CERTIORARI

Aris S. Santiago Pérez

    Acusado-recurrido


SENTENCIA

San Juan, Puerto Rico, a 10 de noviembre de 2003


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida por el Tribunal de Circuito de Apelaciones en el presente caso, devolviéndose el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo aquí dispuesto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Naveira de Rodón concurre en el resultado sin opinión escrita. El Juez Asociado señor Hernández Denton concurre con el resultado de la Opinión emitida por el Tribunal por entender que, de acuerdo a las circunstancias particulares de este caso, la sentencia previa se obtuvo mediante connivencia del acusado, lo cual impide que se invoque la garantía constitucional contra la doble exposición. No obstante, no comparte el criterio mayoritario de que en este caso son también aplicables otras excepciones a la referida doctrina, las cuales permitirían al Estado continuar con un segundo procedimiento criminal por los mismos hechos.


                        Patricia Otón Olivieri
                    Secretaria del Tribunal Supremo