

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Wilfredo J. Rivera Cintrón<br><br>Peticionarios | Certiorari<br><br>2012 TSPR 75<br><br>185 DPR ____ |

Número del Caso: CC-2011-980

Fecha: 19 de abril de 2012

Tribunal de Apelaciones:

> Región Judicial Ponce

Abogado de la Parte Peticionaria:

> Lcda. Zinia Acevedo Sánchez

Oficina del Procurador General:

> Lcda. Zaira Lebrón Anadón
> Subprocuradora General
>
> Lcda. Lisa M. Durán Ortiz
> Procuradora General Auxiliar

Materia: Derecho Penal – Concurso de delitos (Arts. 78 y 79 del Código Penal de 2004)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

     Recurrido

                  CC-2010-0980
      v.

Wilfredo J. Rivera Cintrón

     Peticionario


Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES


En San Juan, Puerto Rico, a 19 de abril de 2012.

En esta ocasión debemos resolver si la posesión simultánea de las drogas conocidas como marihuana, cocaína y heroína constituye uno o tres delitos al amparo del Art. 404 de la Ley Núm. 4 de 23 de junio de 1971, conocida como la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404. De igual forma, nos corresponde auscultar si a la Ley Núm. 4, íd., le aplica la parte general del Código Penal de 2004, y en particular, la figura del Concurso de Delitos regulada en los Arts. 78 y 79 de ese Código, 33 L.P.R.A. secs. 4706-4707.

I

Como parte de un operativo de drogas, varios agentes de la Policía de Puerto Rico intervinieron con el Sr. Wilfredo Rivera Cintrón. Le incautaron 21 bolsas de heroína, 82 bolsas de la droga conocida como "crack", 38 bolsas de cocaína y 11 bolsas de picadura de marihuana. Transcripción de la vista de juicio, Apéndice, pág. 15. Contra el señor Rivera Cintrón se presentaron tres acusaciones por violar el Artículo 401 de la Ley Núm. 4, supra, 24 L.P.R.A. sec. 2401. Específicamente, se le imputó poseer heroína, cocaína y marihuana con intención de distribuirlas. Se presentó una acusación por cada una de las sustancias controladas incautadas.

No obstante, a la luz de la prueba que se presentó durante el juicio por tribunal de derecho, el Tribunal de Primera Instancia declaró al peticionario culpable de otro delito distinto, a saber, tres infracciones al Art. 404 de la misma Ley Núm. 4, supra, 24 L.P.R.A. sec. 2404, posesión simple o sin intención de distribuir.

De este modo, el 30 de septiembre de 2009 el foro primario dictó sentencia. En ella, impuso una pena de tres años de cárcel en cada uno de los tres cargos, para un total de 9 años de prisión. Dispuso además, que la pena se cumpliría consecutivamente y mediante sentencia suspendida en un programa privado de rehabilitación. Durante el acto en que se dictó sentencia, la defensa del señor Rivera Cintrón solicitó que el cumplimiento de las penas fuera

concurrente. Consideró que los delitos imputados surgieron de la misma situación de hechos y de la misma transacción. Por entender que era un asunto discrecional, el Tribunal de Primera Instancia declinó su solicitud y mantuvo el cumplimiento consecutivo de las penas.

En desacuerdo, el señor Rivera Cintrón presentó un recurso de apelación ante el Tribunal de Apelaciones. El acusado señaló que no se probó su culpabilidad más allá de toda duda razonable. Además, adujo que no procedía cumplir sentencia por tres cargos de forma consecutiva pues a su modo de ver, el foro primario "piramidó [sic] las penas de un mismo hecho en una misma fecha- un solo acto". El foro apelativo intermedio emitió una sentencia el 28 de septiembre de 2010 y confirmó el dictamen del foro primario. Luego de discutir y concluir que se probó la culpabilidad del peticionario más allá de duda razonable, el Tribunal de Apelaciones sostuvo que el foro primario no erró al imponer una pena total de 9 años a cumplirse consecutivamente. Cimentó su proceder en que la doctrina del concurso de delitos no podía aplicarse a la Ley de Sustancias Controladas. A tales efectos, expresó:

> Es un hecho cierto que el presente caso, es uno de concurso ideal homogéneo, pues se viola la misma disposición legal más de una vez (Art. 404 de la Ley de Sustancias Controladas). Por tanto, aunque este caso es sobre concurso real de delitos, por no estar atemperada la Ley de Sustancias Controladas al modelo de pena dispuesto en el Código Penal de 2004, el foro de instancia podía imponer una pena de tres años por cada delito de posesión de sustancias controladas. Todo ello, pues las penas no pueden agregarse. Asimismo, respecto al modo de cumplir

las penas, aplica la Regla 179 de Procedimiento Criminal [34 L.P.R.A. Ap. II] la cual le concede discreción al foro de instancia para su imposición de manera concurrente o consecutiva.

Apéndice, pág. 165.

Oportunamente, el señor Rivera Cintrón solicitó reconsideración, que fue denegada. Aun inconforme, el señor Rivera Cintrón presentó ante este Foro el recurso de epígrafe. Señaló que el Tribunal de Apelaciones erró al "considerar que la posesión simult[á]nea y en un solo acto de tres sustancias constituye tres delitos distintos". Petición de certiorari, pág. 10. Además, esbozó que si existía un concurso de delitos, no procedía que las penas fuesen cumplidas de manera consecutiva. Valga apuntar que el señor Rivera Cintrón no adujo como error la insuficiencia de la prueba presentada para sostener su convicción. Por ello, renunció a ese planteamiento en este Tribunal.

Mediante Resolución de 1 de abril de 2011 expedimos el auto de certiorari. Ambas partes comparecieron y expresaron su criterio. Pasamos a resolver el asunto novedoso que tenemos antes nuestra consideración.

II

A

El Art. 404 de la Ley de Sustancias Controladas, supra, reza de la siguiente forma en lo que nos concierne:

Será ilegal el que cualquier persona, a sabiendas o intencionalmente, **posea alguna sustancia controlada**, a menos que tal sustancia haya sido obtenida directamente o de conformidad con la receta u orden de un profesional actuando

> dentro del marco de su práctica profesional, o excepto como se autorice en este capítulo.
>
> Toda persona que viole este inciso incurrirá en delito grave y convicta que fuere será castigada con pena de reclusión por un término fijo de tres (3) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de cinco (5) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de dos (2) años.
>
> ........

(Énfasis nuestro.)

Como se aprecia, los elementos constitutivos del delito de posesión de sustancias controladas estatuido en el Art. 404, íd., son dos: (a) poseer alguna sustancia controlada sin receta u orden emitida por un profesional autorizado; (b) con intención criminal.[1]

En lo que respecta a cuáles son las sustancias controladas prohibidas, notamos que el Art. 202 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2202, contiene una diversidad de disposiciones que establecen cinco clasificaciones de sustancias controladas. Además, identifica por separado las drogas conocidas como marihuana, cocaína y heroína. En este caso, no existe controversia de que al señor Rivera Cintrón se le probó, más allá de toda duda razonable, que poseía las tres drogas mencionadas al mismo tiempo y con intención criminal. Entonces, procede que dilucidemos, en primera instancia, si el señor Rivera Cintrón cometió un delito,

---

[1] Sobre el tema de la intención en el Derecho Penal véase, en general, Pueblo v. Rivera Cuevas, 181 D.P.R. 699 (2011).

tal como él aduce, o cometió tres delitos como sostuvo el Tribunal de Apelaciones.

La Ley de Sustancias Controladas de Puerto Rico, supra, proviene en gran medida de la Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C.A. Sec. 801 et seq. Véase el Informe Conjunto de las Comisión de Salud y Bienestar, y de la Comisión de lo Judicial de la Cámara de Representantes sobre el P. de la C. 1323, eventual Ley Núm. 4, supra.

Aunque la controversia que nos ocupa parece ser recurrente en el foro primario, la realidad es que no es hasta este momento que nos topamos con ella. Así pues, procede que auscultemos cómo la jurisdicción federal, de donde proviene nuestra legislación, ha resuelto controversias similares. Al hacer el análisis, tendremos presente que "[c]uando una de nuestras instituciones derive de determinada tradición jurídica, los precedentes de ésta tendrán valor persuasivo en esta jurisdicción, sin olvido de desarrollos valiosos en otros sistemas, aunque sujeto siempre a las realidades específicas de nuestro medio". Peña Clos v. Cartagena Ortiz, 114 D.P.R. 576, 588 (1983). Véase, además, R. E. Bernier y J. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, 2da ed. Rev., San Juan, Publicaciones J.T.S., 1987, pág. 451.

En United States v. David, 656 F. 2d. 153 (1981), el Quinto Circuito Federal de Apelaciones tuvo que dilucidar

si la posesión simultánea de marihuana y de la droga conocida como metacualona constituía un delito o dos delitos. En su análisis, ese foro concluyó, luego de analizar el historial legislativo de la legislación federal, de la cual se derivó la nuestra, que la intención del Legislador fue "penalizar la posesión de cada sustancia controlada". Íd., pág. 159. (Traducción nuestra.) El Undécimo Circuito Federal de Apelaciones llegó a una decisión idéntica en la sentencia no publicada United States v. Thompson, 2006 WL 760261, n.2.

Por su parte, el Sexto Circuito Federal de Apelaciones tuvo que resolver una controversia similar en United States v. Pope, 561 F. 2d. 663, 669 (1977). Allí, la contención del acusado era a los efectos de que la posesión simultánea de heroína y metadona constituía un solo delito y no dos como argumentó el Ministerio Público. Ese Tribunal, luego de hacer un análisis integrado de la Ley de Sustancias Controladas, resolvió que la posesión simultánea de heroína y metadona constituye dos delitos separados. Cimentó su decisión en que la heroína tenía clasificación I, mientras que la metadona tenía clasificación II.

El Cuarto Circuito de Apelaciones llegó a una decisión semejante en United States v. Grandison, 783 F. 2d. 1152, 1155-1156 (1986). En ese entonces, el acusado Grandison arguyó que la posesión simultánea de heroína y cocaína constituía un solo delito porque todos los hechos

surgían de un solo incidente y, además, las sustancias controladas se descubrieron en el mismo salón y fueron descubiertas simultáneamente. No obstante, el foro apelativo federal le dio la razón al Ministerio Público y resolvió que realmente se trató de dos delitos. Íd., pág. 1156. Ese también es el parecer del Segundo Circuito Federal de Apelaciones, según resuelto en United States v. De Jesús, 806 F. 2d. 31 (1986).

La postura del Primer Circuito Federal de Apelaciones es cónsona con la de los otros tribunales mencionados. En particular, el Primer Circuito sostuvo en United States v. Bonilla Romero, 836 F. 2d. 39, 47-48 (1988), que la posesión simultánea de diferentes sustancias controladas constituía delitos distintos. Incluso, ese foro esbozó que una interpretación textual del artículo revelaba su alcance. En específico, indicó:

> We believe these holdings are consistent with the plain meaning of §841 (a) (1) which creates a violation for possession of "a controlled substance", not for "a controlled substance or group of controlled substances".

Íd., pág. 47.

B

Nos parece altamente persuasiva la interpretación que los distintos tribunales federales de apelaciones dan a la ley federal de sustancias controladas, supra, que es muy similar a la nuestra.

El Art. 404 de nuestra ley, supra, establece que quien posea alguna sustancia controlada con intención

criminal infringe ese precepto. Entonces, la controversia medular consiste en auscultar si la frase "alguna sustancia controlada" puede interpretarse como la posesión de <u>varias</u> sustancias controladas al mismo tiempo. Una interpretación del texto del Art. 404, <u>supra</u>, y de la intención legislativa que la motivó nos lleva a concluir que ese artículo se quebranta <u>cada vez</u> que una persona posee <u>una</u> sustancia con intención criminal.

No podemos concebir cómo se puede concluir que la frase "alguna sustancia controlada" recoge la situación en que una persona posee varias sustancias controladas a la vez. Es decir, lo que pretende el peticionario es que enmendemos el Art. 404, <u>supra</u>, para que lea "alguna sustancia controlada o algunas sustancias controladas". Si la Asamblea Legislativa hubiese querido que la posesión simultánea <u>de diferentes</u> sustancias controladas constituyera un solo delito, así hubiera redactado el Art. 404, <u>supra</u>. No obstante, el Legislador no lo hizo.

Resolvimos de forma similar en <u>Pueblo v. Matos Pretto</u>, 93 D.P.R. 113, 127 (1966), aunque en un contexto distinto. En esa ocasión, determinamos que una persona que le quita la vida a dos seres humanos en un accidente automovilístico transgrede dos veces el derogado delito de homicidio, regulado en el Art. 203 del Código Penal de 1937, 33 L.P.R.A. sec. 635. En particular, indicamos:

> Con la muerte ilegal, no maliciosa, de "un ser humano" en ocasión de realizarse un acto legal sin la debida prudencia o circunspección, queda perpetrado un delito de homicidio involuntario.

Los Arts. 205 y 206 hablan en términos singulares como "para que la muerte constituya ... homicidio será preciso que la víctima muera" y "ninguna persona podrá ser convicta de ... homicidio a menos que la muerte de la persona," etc. No se refieren a "seres humanos," ni a personas muertas." Se incurre pues, en delito, con perfecta independencia y sustantividad cada vez que un ser humano muere en esas circunstancias.

Íd.

Así pues, concluimos que la posesión simultánea de marihuana, cocaína y heroína constituye tres delitos distintos al amparo del Art. 404, supra. Dicho de otro modo, se incurre en delito, con perfecta independencia y sustantividad cada vez que, con intención criminal, se posee una sustancia controlada sin receta u orden emitida por un profesional autorizado. Sin embargo, ello no dispone de la controversia ante nuestra consideración. Como siguiente paso metódico, nos toca resolver si la decisión del Legislador de no tipificar la posesión simultánea de marihuana, cocaína y heroína como un solo delito vulnera la Constitución de Estados Unidos o la de Puerto Rico.

III

A

En Pueblo v. Santiago, 160 D.P.R. 618, 626 (2003), mencionamos que un principio básico de nuestro ordenamiento jurídico "es que ninguna persona será puesta en riesgo de ser castigada dos veces por el mismo delito". Específicamente, la Quinta Enmienda de la Constitución de los Estados Unidos esboza que "nadie podrá ser sometido

por la misma ofensa dos veces a un juicio...". L.P.R.A., Tomo I.[2] Por su parte, el Art. II, Sec. 11 de la Constitución de Puerto Rico establece que "[n]adie será puesto en riesgo de ser castigado dos veces por el mismo delito". L.P.R.A., Tomo I. El propósito de esa garantía constitucional es evitar que el Estado abuse de su autoridad y hostigue a un ciudadano con procedimientos múltiples por un solo hecho delictivo. Pueblo v. Santiago supra, pág. 627.

El desarrollo jurisprudencial del Tribunal Supremo de los Estados Unidos de América revela que aún se encuentra vigente el análisis que se empleó en Blockburger v. United States, 284 U.S. 299 (1932), reiterado en Texas v. Cobb, 532 U.S. 162, 172-173 (2001); Rutledge v. United States, 517 U.S. 292, 297-298 (1996); Ball v. United States, 470 U.S. 856, 861-864 (1985); Whalen v. United States, 445 U.S. 684, 691-695 (1980) y Brown v. Ohio, 432 U.S. 161, 167-168 (1977). Allí, el Tribunal Supremo federal indicó que la norma aplicable para determinar si el mismo acto o transacción constituye una violación de dos disposiciones legales distintas es analizar si cada disposición penal infringida requiere prueba de un hecho adicional que la

---

[2] El texto original en inglés es el siguiente: *"no person shall be subject for the same offence to be twice put in jeopardy…"*.

otra no exige. Blockburger v. United States, supra, pág. 304.[3]

La Profesora Olga E. Resumil Ramírez interpreta lo resuelto en Blockburger v. United States, supra, de la siguiente forma:

> El análisis estricto de esta doctrina lleva a la interpretación de que casi ningún caso de concurso estaría protegido contra procesos múltiples toda vez que en casi la totalidad de los casos la tutela penal que distingue las conductas punibles por su tipificación contienen elementos distintos que lo caracterizan a tenor con el bien tutelado.
>
> O.E. Resumil Ramírez, Derecho Procesal Penal, San Juan, Butterworth Legal Publishers, 1993, Tomo II, Sec. 26.10, pág. 337

A una conclusión similar llegó el Prof. Chiesa Aponte. Véase, E.L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1992, Vol. 2, Sec.16.5, págs. 420-421.

Como señala el Prof. Mañalish Raffo, el llamado *Blockburger test* "exige que el tribunal compare [las] definiciones [de los delitos] para así verificar que cada uno requiera, a lo menos, un elemento que el otro no requiere. Si esto se da, entonces puede castigarse por más de un delito". J.P. Mañalich Raffo, El concurso de delitos: bases para su reconstrucción en el derecho penal de Puerto Rico, 74 Rev. Jur. U.P.R. 1021, 1068 (2005).

---

[3] El texto en inglés indica: "*The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.*"

Ahora bien, "si la definición de uno de los delitos incorpora todos los elementos que exige la definición del otro, entonces se trata de un solo delito, en la medida en que el segundo constituye un delito 'menor incluido' (*lesser included offense*)".Íd., págs. 1068-1069.

En Puerto Rico, no contamos con jurisprudencia que brinde mayor protección en cuanto a esa cláusula constitucional. Por el contrario, en varias ocasiones hemos acogido la norma que se pautó en Blockburger v. United States, supra. Pueblo v. González Rivera, 94 D.P.R. 686, 689 (1967); Pueblo v. Martínez Ríos, 89 D.P.R. 362, 365 (1963); Pueblo v. Tribunal Superior, 82 D.P.R. 47, 51 (1961). Véase, además, E.L. Chiesa Aponte, Doble Exposición, 59 Rev. Jur. U.P.R. 479, 491 (1990).[4] Es decir, no hay factura más ancha. E.L. Chiesa Aponte, Los derechos del acusado y la factura más ancha, 65 Rev. Jur. U.P.R. 83, 117-118 (1996).

El único precedente de este Foro que parece estar en conflicto con lo resuelto en Blockburger v. United States, supra, es Pueblo v. Meléndez Cartagena, 106 D.P.R. 338 (1977). En ese caso, rechazamos aplicar el *Blockburger test* para resolver que procedía una convicción por tres

---

[4] Como muy bien señala el Prof. Chiesa Aponte, la protección del derogado Art. 63 del Código Penal de 1974, 33 L.P.R.A. sec. 3321, era mayor que la que ofrece la cláusula constitucional contra castigos múltiples. E.L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, op. cit., pág. 181. Sobre la protección que brindan los Arts. 78 y 79 del Código Penal de 2004, supra, nos expresaremos más adelante.

delitos que surgían de un episodio criminal. En específico, resolvimos que había impedimento para castigar por los delitos de (1) posesión, (2) transportación y ocultación, y (3) distribución de heroína. Íd., pág. 348.

Sustentamos nuestra decisión en que el Art. 63 del Código Penal de 1974, 33 L.P.R.A. sec. 3321, protegía una "pluralidad de acciones convergentes en un mismo acontecimiento antijurídico", lo que ocurría "cuando se consumen en etapas sucesivas diversos delitos, con tan estrecho ligamen causal entre cada estadio que el de rango mayor absorbe las sanciones correspondientes a los otros". Pueblo v. Meléndez Cartagena, supra, pág. 348. Sin embargo, expresamos que la interpretación estatutaria hacía "innecesaria la consideración en términos constitucionales del resultado de imponer múltiples penas por el mismo acto". Íd., pág. 347. Dicho de otro modo, nuestra decisión descansó totalmente en el Art. 63 del Código Penal de 1974, supra, y no en la cláusula constitucional contra castigos múltiples.

B

En el caso que nos ocupa, para probar cada cargo se requirió prueba distinta e independiente, con su cadena de evidencia correspondiente para cada sustancia controlada. Esa prueba demostró que el señor Rivera Cintrón poseyó simultáneamente: marihuana, cocaína y heroína, sustancias controladas que el legislador catalogó de forma diferente en la ley que nos ocupa. Como cada cargo requirió prueba

distinta e independiente, se cumplió con el análisis establecido en Blockburger v. United States, supra, y su progenie. Tal como señalaron los profesores E.L. Chiesa Aponte y O.E. Resumil Ramírez, la protección constitucional que ofrece la cláusula contra castigos múltiples en este contexto es muy limitada.

Por consiguiente, concluimos que la determinación que hizo el foro apelativo intermedio, que hoy refrendamos, a los efectos de que la posesión simultánea de marihuana, cocaína y heroína constituye tres delitos distintos al amparo del Art. 404, supra, no vulnera la Constitución de Estados Unidos ni la de Puerto Rico.

Ahora bien, como último paso analítico debemos auscultar si la parte general del Código Penal aplica a la Ley de Sustancias Controladas. De ser así, procedería aplicar la figura del concurso de delitos, según se regula en los Arts. 78 y 79 de ese Código.

IV

A

El Art. 11 del Código Penal de 2004, 33 L.P.R.A. sec. 4639, expresa que "[l]os principios contenidos en este subtítulo aplican a la conducta regulada por otras leyes penales, salvo que éstas dispongan lo contrario". Conforme a lo anterior, en nuestra jurisdicción la parte general del Código Penal aplica a las leyes penales especiales, a menos que estas contengan disposición en contrario. En el caso específico del concurso de delitos, la Asamblea

Legislativa fue más enfática pues aprobó la Ley Núm. 317-2004, mediante la cual enmendó la Regla 179 de Procedimiento Criminal. 34 L.P.R.A. Ap. II. Como resultado de esa enmienda, la Regla 179 quedó redactada de la forma siguiente:

**Regla 179. Sentencias consecutivas o concurrentes**

Cuando una persona fuere convicta de un delito, el tribunal sentenciador, al dictar sentencia, deberá determinar si el término de prisión impuesto habrá de cumplirse consecutiva o concurrentemente con cualquiera o cualesquiera otros términos de prisión. Si el tribunal omitiere hacer dicha determinación, el término de prisión impuesto se cumplirá concurrentemente con cualesquiera otros que el tribunal impusiere como parte de su sentencia, o con cualesquiera otros que ya hubieren sido impuestos a la persona convicta.

**En casos donde exista un concurso ideal, concurso real, o delito continuado, se sentenciará conforme lo disponen las secs. 4706 a 4708 del Título 33, parte del Código Penal del Estado Libre Asociado de Puerto Rico.**

(Énfasis nuestro.)

Al escudriñar detenidamente la Ley de Sustancias Controladas, _supra_, nos percatamos de que esta no prohíbe que se aplique la parte general del Código Penal a los delitos tipificados en ella. Por ende, es necesario concluir, según el Art. 11 del Código Penal, _supra_, y la Regla 179 de Procedimiento Criminal, _supra_, que la parte general del Código Penal de 2004 aplica a la Ley de Sustancias Controladas, _supra_. La Profesora Dora Nevares Muñiz concluye de forma distinta. En particular, menciona:

¿Cómo opera el concurso cuando se imputan delitos del Código Penal y la Ley de Sustancias Controladas que no ha sido enmendada para adoptar el modelo del Código? Como esta ley no tiene una disposición que impida el concurso de penas como lo tiene la Ley de Armas, se atenderá a la Regla 179 de Procedimiento Criminal. Entiendo que el juez impondrá una sentencia conforme el Art. 79 del Código Penal para las convicciones bajo el Código y otra sentencia por la convicción bajo la Ley de Sustancias Controladas. Como bajo el Código se trata de penas de reclusión en años naturales, mientras que bajo la Ley de Sustancias Controladas son en años sujetos a la bonificación automática de la Ley de Corrección, las penas no pueden agregarse. En ese caso, las penas se cumplirían de forma concurrente, salvo que el juez disponga que sean consecutivas. Regla 179 de Procedimiento Criminal.

D. Nevares Muñiz. Derecho Penal Puertorriqueño, Nuevo Código Penal de Puerto Rico, Ed. Instituto para el Desarrollo del Derecho, Inc., San Juan, 5ta ed., 2005, pág. 408.

Aunque simpatizamos con el razonamiento de la profesora Nevares Muñiz, no podemos refrendarlo. La Ley de Sustancias Controladas contempla un sistema de penas distinto al del Código Penal de 2004. Sin embargo, el Legislador no indicó que la parte general del Código Penal aplicaría solo a leyes penales especiales que tuviesen un sistema de penas similar al de ese cuerpo. Por el contrario, la Asamblea Legislativa dispuso que la parte general del Código Penal aplicaría a las leyes penales especiales, salvo disposición en contrario. La Ley de Sustancias Controladas no contiene una disposición en contrario. Además, la Regla 179 de Procedimiento Criminal, supra, dispone diáfanamente que cuando exista un concurso de delitos, se sentenciará conforme a los Arts. 78, 79 y 80 del Código Penal, 33 L.P.R.A. secs. 4706-4708. Así

pues, procede que analicemos la figura del concurso de delitos a la luz de los hechos que nos ocupan.

B

Además de la protección constitucional contra castigos múltiples antes discutida, nuestro ordenamiento jurídico contiene los Arts. 78 y 79 del Código Penal de 2004, supra, que regulan respectivamente, el concurso ideal y real de delitos. El Art. 78, supra, dispone:

*Subcapítulo IV. Concurso*

**§ 4706. Ideal y Medial de delitos**

Cuando sean aplicables a un hecho dos o más disposiciones penales, cada una de las cuales valore aspectos diferentes del hecho, o cuando uno de estos es medio necesario para realizar el otro, se condenará por todos los delitos concurrentes, pero sólo se impondrá la pena del delito más grave, seleccionada de la mitad superior del intervalo de pena.[5]

Mediante el concurso ideal, una persona realiza un solo acto que infringe varias disposiciones penales. L.E. Chiesa Aponte, Derecho Penal Sustantivo, Publicaciones J.T.S., 2007, Pág. 69. Véase, además, Pueblo v. Álvarez Vargas, 173 D.P.R. 587 (2008). La glosa española en el tema expresa que "no puede valorarse igual una acción que produce un solo delito, que cuando esa misma acción

---

[5] El Art. 78, supra, regula también el llamado concurso medial. Este surge cuando existen "dos [hechos] perfectamente diferenciados; pero la conexión íntima entre los delitos cometidos, que es una teleológica de principio a fin, hace que el legislador los equipare al concurso ideal propiamente dicho". F. Muñoz Conde y M. García Arán, op. cit., pág. 463. Como este caso no versa sobre ese tipo de concurso, no profundizamos en su análisis.

realiza varios delitos. En este último caso, la aplicación de uno solo de los tipos delictivos no agotaría la valoración plena del complejo delictivo". F. Muñoz Conde y M. García Arán, Derecho Penal: Parte General, Valencia, Tirant lo Blanch, 7ma ed., pág. 462.

Al explicar el concurso ideal, los estudiosos del tema diferencian el concurso ideal heterogéneo del concurso ideal homogéneo. L.E. Chiesa, op cit., pág. 69. El concurso ideal heterogéneo se configura cuando un hecho transgrede dos o más delitos distintos. Mañalich Raffo, supra, pág. 1036. Por su parte, en el concurso ideal homogéneo se viola el mismo tipo penal varias veces. Santiago Mir Puig explica que el concurso ideal, según regulado en el Código Penal español,

> no ha pretendido alcanzar al llamado concurso *homogéneo*, que necesariamente implica igual gravedad de los delitos en concurso. La razón material podría verse en que en esta clase de concurso de delitos, que se da cuando mediante una conducta se producen varios resultados, en realidad no concurre un solo "hecho", sino tantos "hechos" cuantos resultados producidos dolosamente, estos es: que no se trata de un propio concurso ideal, sino de un concurso *real*... . Ahora añadiré que sólo admitiendo dicha pluralidad de hechos puede explicarse que en el ejemplo propuesto [matar a varias personas con una sola bomba] se afirme la existencia de un concurso de delitos de homicidio, es decir, varios "homicidios". Si no correspondiese un hecho distinto para cada muerte, sólo podría decirse que existe un hecho con varias muertes, no con varios homicidios, pues el delito de homicidio no sólo requiere la muerte, sino el hecho de matar. Cada delito de homicidio requiere un hecho homicida.
>
> S. Mir Puig, Derecho Penal Parte General, 7ma ed., Buenos Aires, Editorial B de f, 2005, págs. 640-641.

A una conclusión idéntica llega la Prof. Nevares Muñiz en cuanto a nuestro Código Penal de 2004:

> El Artículo 78 regula el concurso ideal que algunos llaman heterogéneo. Distíngase que, no se atiende en este artículo lo que los tratadistas denominan concurso ideal homogéneo. Cuando se viola la misma disposición penal más de una vez como parte de un mismo hecho, (e.g., un conductor impacta con su automóvil a otras personas) y causa tres lesionados, se trata de un concurso real, atendido en el Art. 79 de este Código.
>
> D. Nevares Muñiz, <u>Nuevo Código Penal de Puerto Rico</u>, San Juan, Ed. Instituto para el Desarrollo del Derecho, Inc., 3ra ed., 2008, págs. 111-112.

Como se aprecia, en nuestra jurisdicción el concurso ideal homogéneo se trata como un concurso real, según regulado en el Art. 79, <u>supra</u>, que lee:

**§ 4707. Real de delitos**

> Cuando alguien haya realizado varios delitos que sean juzgados simultáneamente, cada uno de los cuales conlleva su propia pena, se le sentenciará a una pena agregada, que se determinará como sigue:
>
> (a) Cuando uno de los delitos conlleve pena de reclusión de noventa y nueve (99) años, ésta absorberá las demás.
>
> (b) Cuando más de uno de los delitos conlleve reclusión por noventa y nueve (99) años, se impondrá además una pena agregada del veinte por ciento (20%) por cada víctima.
>
> **(c) En los demás casos, se impondrá una pena para cada delito y se sumarán, no pudiendo exceder la pena agregada del veinte por ciento (20%) del límite máximo del intervalo de pena para el delito más grave.**

La profesora Helen Silving define el concurso real de delitos como "[v]arias unidades de conducta que se suceden una a otra con intervalos más o menos largos, pero

juzgadas en conjunto, [que] pueden violar la misma ley o diversas leyes". H. Silving., Elementos Constitutivos del Delito, San Juan, Editorial Universitaria, 1976, pág. 180. Por su parte, la Prof. Nevares Muñiz explica que en "la doctrina penal civilista el concurso real se trata como una figura procesal que requiere que se juzgue al actor en un mismo proceso por todos los delitos que cometió". D. Nevares Muñiz, Derecho Penal Puertorriqueño Parte General, 5ta ed., San Juan, Instituto para el Desarrollo del Derecho, Inc., 2005, sec. 8.4.6, pág. 354.

Sobre la forma de computar las penas bajo el concurso real, el Prof. L.E. Chiesa Aponte expresa que el Código Penal de 2004 "dispone que la pena impuesta en estos supuestos no puede exceder 'el 20% del límite máximo del intervalo de pena máxima del delito más grave'. Esto equivale a multiplicar la pena máxima por 1.20". L.E. Chiesa Aponte, op. cit., pág. 68. Conforme a lo anterior, en los casos en que haya un concurso real de delitos, lo que procede es sumar las penas de todos los delitos. Luego, se multiplica el límite máximo del intervalo de pena para el delito más grave por 1.20. Entre esas dos sumas se escoge la más baja. Pueblo v. Álvarez Vargas, supra, pág. 600.

C

En este caso, el foro apelativo intermedio indicó que existía un concurso ideal homogéneo porque se violó la misma disposición penal tres veces. Sin embargo, entendió

que la Ley de Sustancias Controladas no estaba atemperada al modelo de penas dispuesto en el Código Penal de 2004, por lo que el foro primario contaba con discreción para imponer las penas consecutivas, según la Regla 179 de Procedimiento Criminal, supra. El Tribunal de Apelaciones estuvo correcto en cuanto a la primera aseveración, pero incorrecto en cuanto a la segunda.

Como se explicó anteriormente, la parte general del Código Penal aplica a la Ley de Sustancias Controladas. Consecuentemente, el Tribunal de Primera Instancia no tenía discreción para imponer las penas consecutivamente. Lo que procedía era computar la pena conforme al Código Penal.

Sin lugar a dudas, en el caso presente se configuró un concurso ideal homogéneo de delitos, porque se violó la misma disposición penal (Art. 404, supra) tres veces. Como se indicó anteriormente, ese tipo de concurso se atiende conforme dispone el Art. 79, supra.

Así pues, concluimos que el señor Rivera Cintrón transgredió el Art. 404, supra, tres veces, lo que constituye un concurso real. Realizado el cómputo correspondiente, determinamos que el señor Rivera Cintrón debe cumplir seis años de prisión, a ser consumados mediante sentencia suspendida en un programa de rehabilitación privado, según dispuso el foro primario.

En este caso el límite máximo del intervalo de pena para el delito más grave es 5 años. Véase, Art. 404,

supra. Adviértase que primero se suman todas las penas, que en este caso totalizan 9 años. Luego, se multiplica el límite máximo del intervalo de pena para el delito más grave que en este caso es 5 años por 1.20, para un total de 6 años. Entre las dos sumas seleccionamos el total de 6 años por ser menor. Véase, Pueblo v. Álvarez Vargas, supra, pág. 600.

V

Por todo lo anterior, revocamos la sentencia que emitió el Tribunal de Apelaciones. Determinamos que el señor Rivera Cintrón debe cumplir seis años de prisión, a ser consumados mediante sentencia suspendida en un programa de rehabilitación privado, según dispuso el foro primario.

Se dictará Sentencia de conformidad.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Recurrido

                      CC-2010-0980

      v.

Wilfredo J. Rivera Cintrón

     Peticionario


SENTENCIA


En San Juan, Puerto Rico, a 19 de abril de 2012.


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revoca la sentencia que emitió el Tribunal de Apelaciones. Determinamos que el señor Rivera Cintrón debe cumplir seis años de prisión, a ser consumados mediante sentencia suspendida en un programa de rehabilitación privado, según dispuso el foro primario.

Lo acordó y ordena el Tribunal, y lo certifica la secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez no intervino.


Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo